Buchanan v. Hubbard.

Filed May 28, 1889.

| | |
|---|---|
| 119 | 187 |
| 123 | 245 |
| 119 | 187 |
| 142 | 534 |

No. 13,445.

BUCHANAN v. HUBBARD.

LAW OF OTHER STATE.—*Rule in Absence of Proof of.*—The laws of a State, to whose courts a party appeals for redress, furnish in all cases *prima facie* the rule of decision, and if either party claims the benefit of a different rule he must aver and prove it, like other facts of which the courts do not take judicial notice.

Buchanan v. Hubbard.

SAME.—*Common Law.*—*Presumption as to.*—In respect to general principles, the common law is presumed to be in force in most of the States, subject to such modifications as may have resulted from legislative or judicial construction, and if no such modifications are shown, the courts of this State will apply such principles as they are interpreted in this State.

SAME.—There is no presumption that the common law prevails in the States in which civil governments were established prior to their becoming territories or States of the Union, but, in the absence of a showing to the contrary, it will be presumed that the law of such States is the same as that which prevails here.

SAME.—*Civil Law.*—*Louisiana Purchase.*—*State of Kansas.*—The State of Kansas, although territorially a part of the Louisiana purchase, is not one of the States in which the principles of the civil law ever prevailed.

CONVEYANCE.—*Husband and Wife.*—*Land in Other State.*—*Trust.*—*Common Law.*—Where the consideration for land situate in a State in which the common law is presumed to prevail is paid by a wife, and the conveyance taken in the name of the husband, without her consent, a trust will be held to result in favor of the wife, in the absence of a showing that the rule of the common law has been changed.

SAME.—*Conveyance by Infant.*—*Disaffirmance.*—Where the specific property received by an infant as a consideration for the conveyance of land remains in his hands at the time of disaffirming the conveyance, and is capable of return, he is bound to give it up; and if, after arriving at age, he disposes of the property received, or asserts title to it as his own, he thereby affirms the contract and can not recover the land conveyed by him.

SAME.—*Infant Married Woman.*—*Disaffirmance.*—*Ratification.*—An infant married woman, a few days before she became of age, exchanged her land in this State for land in Kansas, the latter being conveyed to her husband. Possession was taken of the Kansas land and held for many years. While still in possession, the wife notified a remote grantee of her grantee of her disaffirmance of the conveyance, and commenced an action to recover possession. After the commencement of the action she joined her husband in conveying the Kansas land, the express purpose being to prevent its reclamation.

*Held*, that the plaintiff never arrived at the mental state constituting a disaffirmance, and that the conveyance of the property received was a complete ratification of the former conveyance.

From the Hendricks Circuit Court.

*C. Foley*, for appellant.

*L. M. Campbell, J. S. Duncan, C. W. Smith* and *J. R. Wilson*, for appellee.

MITCHELL, J.—This is an appeal by Emily A. Buchanan from a judgment of the Hendricks Circuit Court, rendered in an action brought by her against William S. Hubbard to recover the possession of certain real estate which the plaintiff alleges she conveyed to a remote grantor of the defendant, while she was an infant, and which conveyance she avers she afterwards disaffirmed.

The material facts upon which the judgment is predicated, as they appear in the special finding of the court, are the following: On the 3d day of October, 1867, the plaintiff, being the owner of the land in controversy, agreed, through the agency of her husband, to exchange it with one Pennington for certain lands in the State of Kansas, she to receive in addition four hundred dollars in money. At the time the agreement and conveyance were made, the plaintiff was the wife of John Buchanan, and lacked about ten days of being twenty-one years old. Pennington, without the knowledge or consent of the plaintiff, executed a deed conveying the Kansas land to her husband, but before she delivered the conveyance for the Hendricks county land, in which her husband joined, she was apprised of the fact that the latter had been named as grantee in the conveyance from Pennington. The four hundred dollars were paid to the plaintiff's husband for her benefit by Pennington, who had no knowledge that she was not twenty-one years of age. Buchanan and his wife took possession of the Kansas land on the 15th day of October, 1867, and continued in possession until they sold it, in 1885. The Hendricks county land, through various mesne conveyances, came to the possession of Hubbard in 1880. In 1882, the plaintiff and her husband, being still in the possession of the land obtained from Pennington, caused a written notice to be served on the defendant Hubbard, to the effect that she disaffirmed the conveyance to Pennington, on the ground that she was an infant at the date of its execution. Subsequently she instituted this suit to recover the land, and after the commencement of the action

she joined her husband in a conveyance of the Kansas land, which he sold and conveyed for $3,800, with the intention to enable him to obtain the proceeds of the sale and prevent the land from being recovered from him in case she should recover the land in controversy. The only question presented for decision is, whether or not, upon the foregoing facts, the judgment that the plaintiff take nothing by her suit was right.

The plaintiff having paid the consideration for the Kansas land, her husband, who took the title in his name without her knowledge or consent, took it in trust for the benefit of his wife. *Mitchell* v. *Colglazier*, 106 Ind. 464, and cases cited.

It is insisted, however, that because the transaction involved a tract of land in the State of Kansas, the law of that State alone can be looked to in order to determine whether or not a trust resulted to the plaintiff, notwithstanding the conveyance to her husband in the manner found by the court. Hence it is argued, since the law of Kansas was not pleaded and proved, and because that State was territorially carved out of what is known as the " Louisiana purchase," neither the law of Indiana nor the common law can be applied to the case.

It is sufficient to say that the laws of a State to whose courts a party appeals for redress, furnish in all cases *prima facie* the rule of decision, and if either party claims the benefit of a different rule, since the courts are presumed to be acquainted only with their own laws, he who asserts the existence of a different rule, as applicable to his case, must aver and prove it, like other facts of which the courts do not take judicial notice. *Cincinnati, etc., R. R. Co.* v. *McMullen*, 117 Ind. 439; *St. Louis, etc., R. W. Co.* v. *Weaver*, 35 Kan. 412. As was said in *Crake* v. *Crake*, 18 Ind. 156: " Where a right is sought to be enforced in one State in relation to a subject-matter existing in a foreign State, and no foreign law is proved, and no common law rule ever

prescribed, and no contract exists, * * * the court will apply the law of the State in which it is sitting." *Monroe* v. *Douglass*, 5 N. Y. 447; *Whidden* v. *Seelye*, 40 Maine, 247; Rorer Interstate Law, 33–34.

In respect to general principles, the common law is presumed to be in force in most of the States, subject to such modifications as may have resulted from legislation or judicial construction. If these latter are not shown, the court applies the principles of the common law, as those principles are interpreted in the State where the trial is proceeding. *Rape* v. *Heaton*, 9 Wis. 328; *Legg* v. *Legg*, 8 Mass. 99.

It is true that as to those States in which there were established civil governments, or systems of domestic law, prior to their becoming territories or States of the Union, the presumption that the common law prevails is not indulged, and in such a case, in the absence of anything to the contrary being shown, the court will presume that the foreign law is the same as that which prevails here. The State of Kansas, although territorially a part of the Louisiana purchase, is not one of the States in which the civil law ever prevailed, and the principle sought to be interposed is, therefore, not applicable.

It is a universal rule, governing courts of chancery, in the absence of a modifying statute, that a trust results in favor of a purchaser who advances the purchase-money in the character of a purchaser and takes the title to real estate in the name of a third person, unless the relationship of the parties was such as to give rise to the presumption that the purchase was intended as a gift or advancement. 1 Lewin Trusts, 163. Accordingly, Lord Chief Baron EYRE, in *Dyer* v. *Dyer*, 2 Cox Ch. 91, declared that "The clear result of all the cases, without a single exception, is, that the trust of a legal estate * * * results to the man who advances the purchase-money. This is a general proposition supported by all the cases, and there is nothing to contradict it; and it goes on a strict analogy to the rule of the common

law, that where a feoffment is made without a consideration, the use results to the feoffor." Our statute has so modified the common law rule, that "When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former," except as against the creditors of the person paying the consideration, or in case the alienee shall have taken the conveyance in his own name, without the consent of the person with whose money the consideration was paid, or where it was so taken in violation of some trust, etc. Sections 2974, 2975, 2976, R. S. 1881. Upon the assumption that the common law prevails in the State of Kansas, it is clear that a trust resulted in favor of the plaintiff, when her husband took the title to the Kansas land in his own name, she having paid the purchase-money, as purchaser. This is so according to the rule of the common law, whether the title was taken in the name of the husband with or without the consent of his wife.

Where a married woman pays the purchase-price of real estate and takes the title in the name of her husband, the common law raises no presumption that it was so taken as a gift or advancement to the latter. The presumption in such a case is, that the husband took the title as agent or trustee, and that he was to hold the land in trust for his wife, unless such presumption is rebutted by lapse of time, or by the facts and circumstances surrounding the transaction. *Armacost* v. *Lindley*, 116 Ind. 295; *Hileman* v. *Hileman*, 85 Ind. 1; *Wales* v. *Newbould*, 9 Mich. 45; *Mellinger* v. *Bausman*, 45 Pa. St. 522; *McNally* v. *Weld*, 30 Minn. 209.

Whether, therefore, we apply the rules of the common law or assume that the common law has been modified by statute in the State of Kansas, since, in the absence of any proof showing what modifications had been made, we assume that the common law as modified and interpreted in that State is like our own, the conclusion follows that the plaintiff was

the beneficial owner of the Kansas land, and that her husband held it merely as her agent or trustee. At all events, " We may not assume that the law of that State differs from ours, or that a court of equity in that State would fail to recognize and protect the equitable rights of a married woman to her separate property." *Holthaus* v. *Farris*, 24 Kan. 784; *Robards* v. *Marley*, 80 Ind. 185. It follows from what has preceded that the plaintiff was the beneficial owner of the land which was conveyed to her husband, as the consideration for that which she is now seeking to recover. She owned and with her husband occupied this land when she gave notice that she disaffirmed the deed to Pennington. She continued in possession until after the present suit was commenced, when, in 1885, pending the present action, her husband sold the Kansas property for $3,800, and she joined him in a conveyance, intending that he should appropriate the proceeds of the sale and prevent the consideration which she had retained in specie for years after she had obtained her majority, from being reclaimed in case she succeeded in recovering the Hendricks county land. The question is, did the plaintiff disaffirm or confirm the conveyance made during infancy after she became of age?

That the deed of an infant is only voidable, and not void, is now the accepted rule of decision. And it is also firmly settled that a married woman may, any time during coverture, disaffirm a deed made by her during infancy. *Buchanan* v. *Hubbard*, 96 Ind. 1. But there is some diversity of opinion as to what acts, after reaching majority, will amount to an avoidance of the deed. It is sometimes asserted that the original contract must be vacated by some act equally solemn with the deed itself; while other authorities declare that any act distinctly and unequivocally manifesting an intention to disaffirm the deed, or dissent from the original engagement or transaction, is a sufficient avoidance. *Scranton* v. *Stewart*, 52 Ind. 68; *Losey* v. *Bond*, 94 Ind. 67;

*Richardson* v. *Pate*, 93 Ind. 423 ; *Sims* v. *Bardoner*, 86 Ind. 87 ; *Sims* v. *Everhardt*, 102 U. S. 300 ; *Irvine* v. *Irvine*, 9 Wall. 617 ; Tyler Infancy, 73.

At law an infant is not bound, as a condition precedent to the avoidance of his conveyance on attaining his majority, to restore the consideration received for property conveyed or transferred, provided the consideration has been wasted or lost during minority, or has become absorbed in other property. *Mustard* v. *Wohlford*, 15 Gratt. 329 (Ewell Lead. Cases, 142).

The effect of avoiding the deed is to entitle the infant, who has attained his majority, to recover his property ; while, on the other hand, so much of the specific consideration as remains in his hands may be reclaimed by the party to whom the conveyance had been made. *Carpenter* v. *Carpenter*, 45 Ind. 142 ; *Dill* v. *Bowen*, 54 Ind. 204.

The true rule seems to be, where the specific property received as a consideration, whatever it be, exists and remains in the hands of the infant at the time of disaffirmance, and is capable of return, the latter is bound to give it up. If, after arriving at age, he disposes of the property received, or asserts title to it as his own, he thereby confirms the contract, and can not recover that which he conveyed.

An infant, after attaining majority, can not disaffirm, so far as avoiding his own deed, and yet affirm by holding on to the specific consideration received, then remaining in his possession, and capable of restoration. He becomes a trustee for the other party, so far as the specific property is concerned, and he must respect his right of reclamation.

The authorities all concur in holding that, if one who has conveyed property during infancy is shown to have had possession of the consideration received in specie, upon arriving at age, and if it appears that he thereafter disposed of it, so that it can not be restored, or if he refuses, upon request, to surrender it, such conduct may amount to a confirmation or ratification of the conveyance, and defeat the recovery of

the property conveyed. Having the consideration at the time of reaching his majority, if he thereafter puts it out of his power to restore it, he will not be permitted to avoid his conveyance. *Carpenter* v. *Carpenter, supra ; Fitts* v. *Hall,* 9 N. H. 441 ; Tyler Infancy, 81.

An infant, upon coming of age, will not be permitted to affirm in part and avoid in part. *Hubbard* v. *Cummings,* 1 Maine, 11 (Ewell Lead. Cas. 161, and note). He will not be permitted to repudiate the contract so far as to reclaim his property, and yet affirm it to the extent of retaining or disposing of the property received by him in the transaction. If he avoids his contract he must be willing, at least, to restore the consideration, if in his possession and control. *Price* v. *Furman,* 27 Vt. 268. While it may be true, as has sometimes been asserted, that affirmance and disaffirmance are, in their nature, mental assents, the law can not regard that mental condition as a disaffirmance which assents to a reclamation of the land conveyed, but dissents from a restoration of the consideration then in hand. It is only when the mind assents to a restoration of the specific consideration possessed, as well as to the assertion of a claim to the property conveyed during minority, that it can be said an effectual disaffirmance has occurred. *Manning* v. *Johnson,* 26 Ala. 446 (62 Am. Dec. 732, and note) ; *Chandler* v. *Simmons,* 97 Mass. 508 (93 Am. Dec. 117, and note) ; *Tobey* v. *Wood,* 123 Mass. 89.

Giving notice of a disaffirmance, without offering to restore the consideration, although it remains in hand in kind, is, at best, an equivocal act. If afterwards, the infant being of age, the consideration is deliberately disposed of, it must be held that there was no *bona fide* purpose to disaffirm.

As we have seen, the plaintiff retained the consideration in specie until after the commencement of this suit, which, it may be observed, according to the frame of the complaint, is in the nature of an equitable action for general relief, as well as to recover the land, when she joined in a conveyance

of the land received and held in trust for her, for the express purpose of preventing its reclamation. The court, therefore, very properly held that the plaintiff never arrived at that mental state when she disaffirmed her conveyance to Pennington. The sale of the Kansas property was a complete ratification of the conveyance of the land in controversy.

The judgment is affirmed, with costs.

Filed May 28, 1889.