(Nos. 11635, 11652, 11778.—Reversed and remanded.)
GEORGE TRUMBULL WOODBURY, Appellee, *vs.* THE UNITED
STATES CASUALTY COMPANY *et al.* Appellants.

*Opinion filed June 20, 1918.*

1. CONTRACTS—*release under seal is bar to action at law.* In an action at law a release under seal by a person of his cause of action is a complete bar unless its execution is shown to have been obtained by fraud, as such a release carries with it the presumption that it was executed for a valuable consideration, and to impeach such an instrument for fraud relating to the consideration and not to its execution resort must be had to a court of equity.

2. SAME—*release not under seal may be impeached for want of consideration.* Where a release is not under seal a defense can be made in an action at law that it was without consideration, or that there was payment of only a portion of the amount' due whereas the release was of the whole amount without further consideration.

3. CONFLICT OF LAWS—*when validity of release is governed by law of place where made.* Where an insured releases any action he may have against an insurance company, the validity of the release is governed by the law of the State where it is executed and the contract completely performed.

4. SAME—*what does not preclude presumption that common law prevails in other States.* In Illinois, if the question as to the law of another State is raised, the presumption that the common law prevails there is not precluded by the mere fact that in Illinois the particular subject is controlled by statute.

5. SAME—*when sufficiency of seal on release executed in Oregon will be tested by common law.* Where a release purporting to be under seal is executed in the State of Oregon, in the absence of any evidence as to the law on the subject in said State it will be presumed by the courts of Illinois, in view of the facts, of which the courts will take judicial notice, that the common law prevails in the State of Oregon, and the sufficiency of the alleged seal will be tested by the principles of the common law.

6. SEAL—*a scroll is not a seal at common law.* At common law a seal is an impression upon wax or some tenacious substance, and a scroll embracing the letters "L. S." is not a common law seal.

7. ACTIONS AND DEFENSES—*when question of remedy is not involved in a suit against an insurance company.* In an action of tort against an insurance company to recover possession of a pol-

icy claimed to have been obtained by fraud and duress of the company in the settlement of the claim, no real question of remedy arises under pleas setting up a release purporting to be under seal and executed by the insured at the time of the settlement, as that question arises only when the policy is sued on.

8. SAME—*when demand and refusal are not necessary in suit to recover possession of insurance policies.* In an action against insurance companies on a declaration charging them with having wrongfully obtained possession of the policies of the insured by means of fraud and containing a general count in trover, a demand and refusal are not necessary if the taking was tortious.

9. DEBTOR AND CREDITOR—*acceptance of a sum less than amount due does not discharge debt.* An acceptance by a creditor of a sum less than the amount due in satisfaction of a demand of a sum due, without further consideration, does not discharge the debt.

10. APPEALS AND ERRORS—*when Appellate Court should make finding of facts.* In an action at law the Appellate Court, where it reverses the judgment on questions of law, should either remand the cause for further trial or should make a finding of ultimate facts from the evidence or stipulations in the record in order to enable the Supreme Court to review the case upon questions of law.

11. JUDICIAL NOTICE—*of what facts of history court will take judicial notice.* In determining the presumption as to whether the common law prevails in another State the Supreme Court will take judicial notice of the boundaries of the territory before it became a State, the nature of its acquisition by the United States and of the general characteristics of the country and general nationality of the settlers and inhabitants.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, (JOSEPH W. MOSES, and WALTER BACHRACH, of counsel,) for appellant the United States Casualty Company; WILKERSON, CASSELS & POTTER, (RALPH F. POTTER, and KENNETH B. HAWKINS, of counsel,) for appellant the Ocean Accident and Guaranty Corporation; M. P. CORNELIUS, and GEORGE R. SANDERSON, (MANTON MAVERICK, of counsel,) for appellant the Continental Casualty Company.

FREDERICK A. BROWN, (JESSE J. HERR, and CLIFFORD H. BROWDER, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Appellee, George Trumbull Woodbury, filed separate suits against the United States Casualty Company, the Ocean Accident and Guaranty Corporation, Ltd., and the Continental Casualty Company, in the circuit court of Cook county. The pleadings and issues in all three of the cases are identical. The declarations contained two counts. The first count charged the defendants with having wrongfully obtained appellee's insurance policies by means of fraud and duress. The second was a general count in trover. The defendants each pleaded the general issue and an additional plea averring, in substance, that the plaintiff, after the time of the supposed grievances laid in the declaration and before the institution of the suit, on November 8, 1910, by his deeds of that date released to the defendants all his demands and causes of action whatsoever. The court sustained a demurrer to a third special plea of the defendants and at the same time sustained a demurrer to two replications of appellee to appellants' second special plea. Appellee then filed a replication, in substance averring that he did not execute his deeds of release discharging the defendants from all claims for damages and from all manner of actions which he had charged against them, arising out of the matters and things alleged by appellee in his declaration, which replication was not verified by affidavit. The causes were consolidated for trial, and at the close of the plaintiff's evidence and at the close of all of the evidence, upon motions made by all of the appellants, the court instructed the jury to return verdicts of not guilty and entered judgments against appellee in all the cases. On appeals prosecuted to the Appellate Court for the First District that court reversed the judgments and remanded the causes. All of

the appellants filed a statement and stipulation reciting that the same was made solely for the purpose of expediting the final disposition of the matters in controversy and permitting the final determination of the issues in the Supreme Court, with the sole reservation that any orders or judgments entered by the Appellate Court should be without prejudice to appellants to have the same reviewed in the Supreme Court, said statement and stipulation being to the effect that appellants had no additional evidence to offer upon a new trial; that they waived a re-trial of said cause by jury and submitted the same to the Appellate Court for such order and judgment as to law and justice might appertain; and that if, under the law and facts as shown by the record, the Appellate Court should adhere to its former opinion and refuse to affirm the judgments of the court below, the appellants were then willing that the judgments of the Appellate Court might be modified and such judgments entered by it, final in character, as it might think proper, so as to be reviewable by the Supreme Court. Thereafter, on motion of appellee, the judgments of the Appellate Court were set aside by it, as also were the orders reversing and remanding the causes, and on July 24, 1917, the Appellate Court entered judgments in favor of appellee, the judgment against the Ocean Accident and Guaranty Corporation being for $8294 and costs, the one against the United States Casualty Company being for $1342.98 and costs, and the one against the Continental Casualty Company for the sum of $2226 and costs. All the judgments recited that "upon the allegations and proofs in the record the court finds the issues in favor of George Trumbull Woodbury, the appellee." There was no other or formal finding of the ultimate facts by the Appellate Court, as shown by its judgments. Certificates of importance were granted by the Appellate Court and appellants have all appealed to this court, and the causes were consolidated for hearing and disposition by this court.

The record evidence discloses that in the year 1908 the Ocean Accident and Guaranty Corporation issued to the appellee an accident insurance policy which provided, among other things, for the payment of $12,500 in case the insured lost either hand or foot solely through external, violent and accidental means. The occupation of appellee, as stated in the policy, was that of vice-president of the Columbus Safe Deposit Company, with the ordinary duties of office and traveling. In the year 1910 the Continental Casualty Company and the United States Casualty Company issued to appellee similar policies with practically the same statements therein contained and the same provisions so far as the issues in this suit are concerned, which provided for the payment of $5000 and $2500, respectively, in case the insured lost either foot solely through external, violent and accidental means. On October 1, 1910, the appellee having moved from Chicago to Phœnix, Oregon, while the policies were still in force had his right foot practically shot off a few inches above the ankle through the accidental discharge of a high-power rifle loaded with a .38-caliber soft-pointed bullet, the bullet breaking both tibia and fibia bones, cutting them entirely into two parts and shattering the bones into fragments for some distance around the wound, thereby necessitating the amputation of the foot and lower part of the limb. It was stipulated that appellee had suffered the loss of his right foot solely through external, violent and accidental means, that the policies were then in force and effect and that due proofs of loss were furnished, and no question arises concerning the correctness of the amounts of the judgments if they are otherwise correct.

From the recitals in the opinions of the Appellate Court the other evidentiary facts are, that at the time appellee took out the insurance he was employed by the Columbus Memorial Building as renting agent. On June 10, 1910, he went to Phœnix, Oregon, where his father-in-law lived, to go into the ranch business. Six or eight weeks after his

arrival in Oregon he gave up the idea of going into the ranch business and went into the real estate business at Medford, Oregon, and was in that business at the time he was injured. About August, 1910, he wrote letters to all three of the insurance companies informing them that he was in the real estate business and inquired of them whether or not they considered that business more hazardous, and was informed by all of them, in substance, that they did not consider it more hazardous and that no increase in the premium would be required. On October 1, 1910, appellee went out to a tool-house in the rear of his home and reached up for his rifle. It got away from his hand and struck the door and dropped, muzzle down, and then fell over and was discharged, the bullet going transversely through his right leg about three inches above his ankle. He lost a great amount of blood from the wound and suffered a great deal of pain. In the first operation three inches of the bone of the leg was removed, and he was hardly from under the influence of the anesthetic when the second operation was performed and his foot and lower part of his leg removed, and he was very much weakened in body and mind as a result of the operation. One Wisner, the adjuster for all of the appellants, visited him November 5, 1910, while so suffering from his wound, and informed him that he had come to adjust his claim but wished to make some investigation and would be back again. The next day he came back and informed appellee that he had some suspicious evidence regarding the accident; that it was rather unusual for a man out in the country to have so much insurance, and talked to him of people going to the penitentiary when the evidence was less against them than it was against appellee. He cited the case of a man at Buffalo, New York, who threw his arm under a street car, had it cut off and sued the companies, and that they sent him to the penitentiary. He cited other similar cases, and when appellee informed him that he would not settle for anything but the face value

of his policies he told appellee that the companies would
bankrupt him and possibly put him in the penitentiary; that
they would ruin his reputation anyway; that they had un-
limited funds and the best legal talent in the country, and
that it was foolish for him to attempt to fight them.   On
appellee informing him that he was in no condition to talk
over the matter and that there would be time enough to
settle later, he informed the appellee that it was either fifty
per cent settlement on all the policies ($10,000) on the one
hand or litigation on the other, with the penitentiary as the
possible wind-up for him.   This talk greatly alarmed and
worried appellee and his wife, who was worn down by con-
stant sitting up with him, and they did not sleep that night
but talked about the matter all night, according to appellee's
testimony.   The adjuster called again on the third day, and
after reiterating his talk about the penitentiary for appellee,
and further telling appellee that he was a lawyer and knew
that this was the best thing for appellee to do, and after
assuring him that if he so settled he would not be further
molested, appellee, fearing that the companies might prose-
cute him and send him to the penitentiary on false testi-
mony, accepted the terms and vouchers for the money and
released the companies by executing written releases.   The
Appellate Court further recited in the opinions filed in the
cases that it was bound to assume that the evidence tended
strongly to show that at the time of the accident and at
the time of the settlement there was no justification for
the dispute concerning the occupation of the appellee or as
to the amount of the indemnity to which he was entitled;
that appellants had made some showing in the evidence that
appellee's occupation was that of a ranchman or orchard-
man, but the testimony of appellee was to the effect that it
was that of a real estate agent, and that appellants knew
that he had not changed his occupation and that the ad-
juster knew it.   The Appellate Court further recited that
appellee was in a feeble condition and not normal at the

time of the settlement, and that by "insidious suggestions as to suspicious evidence and the possibilities of the plaintiff going to the penitentiary persuaded the plaintiff to settle for a grossly inadequate sum," and that there was no valid defense against payment of the policies and no consideration for their release.

The main contention of appellants in this case is that the lower court held that appellee's actions were barred by the releases executed by him and his wife as such releases were deeds or sealed instruments, and that appellee could not in any action at law defend against said releases on the ground of want of consideration or for fraud unless he could show that there was fraud in the execution of the instruments,—*i. e.*, that he signed them upon representation that they were some other character of instrument, or that by some other device or trick he was induced to sign them believing they were some other kind of writing. It is well settled in this State that in an action at law a release under seal by a person of his cause of action is a complete bar unless its execution is shown to have been obtained by fraud. Such a release carries with it the presumption that it was executed for a valuable consideration, and no evidence can be introduced for the purpose of showing that there was no consideration for the giving of the instrument. To do so would be to permit one to deny his receipt of the consideration expressed for the purpose of making void a sealed instrument, which under the law in this State is not permissible in any case. Before such an instrument can be impeached for fraud relating merely to the consideration and not to its execution, resort must be first had to a court of equity to set it aside for such fraud. (*Papke* v. *Hammond Co.* 192 Ill. 631; *Jackson* v. *Security Life Ins. Co.* 233 id. 161; *Robinson* v. *Yetter*, 238 id. 320.) The same rule does not apply, however, where the suit is on a simple contract or one not under seal. Simple fraud as to the consideration or fraudulent representations as to the nature

and value of the consideration are a good defense where the
contract is not under seal. (*Robinson* v. *Yetter, supra.*)
It is equally true that where the release is not under seal
a defense can be made that it was without consideration, or
that there was payment of only a portion of the amount due
and a release of the whole amount without any further con-
sideration for the release. These propositions are not con-
troverted by counsel for appellants.

The contention of appellee is that the releases in ques-
tion are not releases under seal and do not purport to be
releases of all rights of action of appellee in this case but
are simply releases of all actions on the policies. There
were two sets of releases signed by appellee and his wife:
one set purporting to release all actions on the policies and
causes of action, and another set which released every claim,
cause of action or right of action whatever upon any and
all claims that appellee and his wife had from the beginning
of the world to the day of the date of said releases. Both
sets of releases were simply signed by appellee and his wife,
and the letters "L. S.," enclosed in parenthesis, followed
their signatures. If they are to be considered as releases
under seal the actions of appellee now in question must be
considered as barred thereby. They were not releases of
actions on the policies, simply, but of all actions of every
kind and character and of all rights or claims concerning
said policies.

The contracts of settlement between appellee and the in-
surance companies were executed and completely performed
in the State of Oregon. The appellee received his money
there in payment of the policies, and the insurance com-
panies there received the insurance policies from appellee
and his contracts of release, which were also made in Ore-
gon. It is therefore contended by appellee that the releases
are Oregon contracts or instruments made in Oregon, and
that their construction and validity are governed by the law
of the place where made. The law is stated correctly on this

proposition. *Woodward* v. *Brooks,* 128 Ill. 222; *Consolidated Tank Line Co.* v. *Collier,* 148 id. 259; 5 R. C. L. 931.

There was no proof in this case as to the laws of Oregon pertaining to the questions in dispute. It is therefore further contended by appellee that it must be presumed, in the absence of such proof, that the common law prevails in Oregon. It is contended, on the other hand, by appellants that in such a case it is presumed that the laws of Oregon are the same as those of Illinois, and that the presumption that the common law is in force in Oregon will not be indulged because Oregon was not one of those States having a common origin, formed by colonies which constituted a part of the same empire and which recognized the common law as the source of their jurisprudence. It is also claimed by appellants that Oregon was a part of the Louisiana purchase obtained by this government from France, and if not so obtained, that it was obtained from Spain by the United States by the Spanish cession and treaty of 1819, and that therefore, as the common law did not prevail in France or Spain at the time of such acquisitions, it must be presumed that the laws of Oregon are the same as the laws of Illinois. As the laws of Illinois recognize a simple scroll or the letters "L. S." in parenthesis as giving to a release the same character and dignity as if executed with a common law seal, with wafer or wax, it is further insisted by appellants that whether the law of Illinois or of Oregon is presumed to be in force, the result in this case will be one and the same and the releases in this case be held to be under seal. Appellants further contend that the law of Illinois governs because the suit is brought here, and as the releases are made the basis of their plea the question is merely one of procedure and of remedy, and that on such questions the law of the forum governs.

In Illinois, if the question as to the laws of a sister State is raised, the presumption in favor of the common law is indulged when the common law on the subject in question

prevails in Illinois, (*Crouch* v. *Hall,* 15 Ill. 263,) and the
presumption in favor of the common law is also indulged
even when the law of Illinois on the subject is statutory.
(*Tinkler* v. *Cox,* 68 Ill. 119; *Schlee* v. *Guckenheimer,* 179
id. 593.)    A number of other States in this country an-
nounce the same rule on the subject, while there are a few
that announce the general rule that the presumption is that
the laws in another State or foreign country are the same
as the laws of the forum until otherwise proved.    In the
case of *Norris* v. *Harris,* 15 Cal. 226, Justice Field, who
was later an associate justice of the Supreme Court of the
United States, laid down three instances in which the pre-
sumption must be indulged that the common law prevails
in the State in the absence of proof and where the subject
of inquiry is as to the law of such State on the point in
question:    (1) In all of the States of the Union which were
originally colonies of England;    (2) in all such States as
are carved out of territory belonging to such colonies; and
(3) in all those States which have been established in ter-
ritory acquired since the revolution, where such territory
was not at the time of its acquisition occupied by an organ-
ized and civilized community, and where, in fact, the popu-
lation of the new State upon the establishment of govern-
ment was formed by immigration from the original States.
The first two propositions laid down in that decision appear
to have been adhered to by the courts of all of the States
in which holdings have been made, whose holdings are simi-
lar to those above announced by this court.    It was also laid
down by Justice Field as the rule that the presumption that
the common law prevails is not indulged as to those States
in which there were established civil governments or sys-
tems of domestic law different from those of the common
law prior to their becoming Territories or States of the
Union, and that in such a case, in the absence of proof,
courts will presume that the foreign law is the same as that
which prevails at the forum.    Accordingly it has been held

by several courts in this country that it would not be presumed that the common law prevailed in Florida, Louisiana and Texas. The third proposition laid down by Justice Field seems to us to be the rule that should be adopted in this case. It was followed in the cases of *Cressey* v. *Tatom,* 9 Ore. 541, and *Buchanan* v. *Hubbard,* 119 Ind. 187. See, also, note to the case of *Cherry* v. *Sprague,* (Mass.) 67 L. R. A. 33, and particularly at page 40, in which note the decisions of the various States of the Union have been fully discussed and distinguished.

While the various questions concerning the Oregon territory were settled between this country and Spain, France and England by treaties and by the Louisiana purchase, nevertheless this court will take judicial notice of the fact that the boundary lines of that territory were finally settled to be the 42d parallel on the south and the 49th on the north; that it was a wilderness, inhabited only by a few emigrants from the eastern part of the United States and by a few trappers and traders emigrating from England or some of her colonies; that it was not inhabited by French or Spanish settlers, or by any other settlers who were governed by the laws of France or Spain, up to the time of the Spanish cession to the United States by the treaty of 1819, and that one among the many claims to the Oregon territory by the United States was that she was entitled to the territory by right of discovery and of occupation. No presumption, therefore, ought to prevail that any rules of law of France, Spain or Mexico were ever at any time in force in the Oregon territory, much less in the State of Oregon at the time this suit was tried in the lower court.

As the validity of a seal directly affects the obligation of a contract it is to be tested by the *lex loci contractus.* Where the remedy upon a written instrument depends upon the question whether it is sealed or unsealed, it is well settled that the sufficiency of the seal is to be tested by the *lex fori* and not by the *lex loci contractus.* (35 Cyc. 1169.)

In the absence of evidence of the law of the State where the instrument was executed, the sufficiency of the seal will be tested by the principles of the common law. (*Waln* v. *Waln,* 53 N. J. L. 429.) The presumption will therefore be indulged in this case that the common law prevails in Oregon, and as the law of Oregon governs the question as to the validity and character of the seal, the releases in question are held to be simple contracts and not under seal. At common law a seal was an impression upon wax or wafer or some tenacious substance. A scroll is not such a seal. (*Waln* v. *Waln, supra; Corlies* v. *VanNote,* 16 N. J. L. 324.) No question of remedy arises in this suit, as that can only arise where the instrument is sued on directly. Many cases are cited by appellants in which it was determined that the instrument was or was not a deed according to the law of the forum wherein the instrument itself was sued on, and in those cases the remedy or the character of the suit was to be determined by the law of the place where the suit was brought. In one of those cases (*LeRoy* v. *Beard,* 8 How. 451,) the Supreme Court of the United States held that the law of the forum governed the remedy, and that that suit was properly instituted in the State of New York on the deed in question in assumpsit because not a deed by the laws of New York for want of a sufficient seal. The deed was made in Wisconsin. After making such holding the court said: "We hold this, too, without impairing at all the principle that in deciding on the obligation of the instrument as a contract, and not the remedy on it elsewhere, the law of Wisconsin, as the *lex loci contractus,* must govern." No real question of remedy ever arose in the case at bar. Appellee began the suits and selected his own remedies, resorting to a court of law and selected actions of tort. When the releases were relied on by the defense they were simply pleaded by appellants in the form applicable to the forms of action already begun. The releases at that stage of the proceedings had nothing to

do with the determination of the remedies or the forms of action by reason of the fact that it was claimed they were deeds.

The effect of our holding so far requires the further holding that the Appellate Court properly held that the releases were not deeds, and that the claim of appellants that their special plea barred appellee's recovery is not sustained. The only remaining defense of appellants to be considered is that made by the general issue pleaded.

Appellants claim as to the first count of the declaration that the evidence in the record did not make out a case for the consideration of the jury. That is a question of law, also, and without discussing further the evidence, we think it was sufficient to authorize the court to submit it to a jury and that the refusal to do so was error.

As to the second count, appellants' contention is that there was no demand made by appellee upon appellants for the policies and that such a demand was necessary. A demand and refusal in such a case are unnecessary if the taking of the property was tortious. (*Hayes* v. *Massachusetts Life Ins. Co.* 125 Ill. 626.) There was no error in holding that no demand was necessary in this case, with a finding that the taking was tortious.

An acceptance by a creditor of a sum less than the amount due in satisfaction of a demand of a sum due, without further consideration, does not amount to a discharge of the debt. With a finding in the record in this case by the Appellate Court that at the time of the accident and settlement in question there was no real or *bona fide* dispute concerning the occupation of the plaintiff or of the amount of indemnity to which he was entitled, and with a further finding of the other ultimate facts above referred to, this court would have jurisdiction to ultimately pass on such findings. But in this record there is no finding of the ultimate facts by the Appellate Court but a mere indication by the language in the opinion that such might have been the inten-

tion. As that court reversed the lower court on propositions of law it should have either remanded the cause for further trial or it should have made a finding of facts under the stipulations in the record so that this court could review the case upon questions of law. This court cannot review questions of fact except for the purpose of determining whether or not they are sufficient to make out a *prima facie* case for appellee.

The judgments must therefore be reversed and the causes remanded to the Appellate Court, with directions to make a finding of the ultimate facts or to enter such other judgments as it may see proper.

*Reversed and remanded.*