(No. 12455.—Reversed and remanded.)

ROBERT A. BOWER, JR., Exr., Defendant in Error, *vs.*
PERRY THRASH, Plaintiff in Error.

*Opinion filed February 20, 1919.*

1. GIFTS—*facts must be proved to establish a valid gift.* Certain facts must be proved to establish a valid gift, and unless such facts are proved as meet the requirements of the law the gift can not be sustained.

2. PRACTICE—*when Appellate Court should make a finding of facts.* Under section 120 of the Practice act, if the Appellate Court reverses a judgment of the lower court in an action at law as the result of finding the facts different from the trial court it must remand the cause for a new trial or recite in its judgment the facts found by it.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

DOBBINS & DOBBINS, and FRANK E. WILLIAMSON, for plaintiff in error.

GREEN & PALMER, and FRANK T. CARSON, (HENRY I. GREEN, WILLIAM G. PALMER, and ORIS BARTH, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was an action in trover originally brought by E. L. Brya, conservator of John Thrash, against plaintiff in error, Perry Thrash, for the conversion to his own use of a promissory note executed by plaintiff in error to John Thrash, his father, for $2000, bearing interest at five per cent from date. Before the case reached final judgment in the circuit court John Thrash died testate, and Robert A. Bower, Jr., was appointed executor and substituted as plain-

287 — 6

tiff in place of the conservator. In the circuit court judgment was rendered for defendant, and the plaintiff appealed to the Appellate Court for the Third District. That court reversed the judgment of the circuit court, did not remand the cause for a new trial, but entered judgment against the defendant for the amount of the principal and interest of the note, $2325. The cause is brought to this court for review by *certiorari.*

It was not denied on the trial by plaintiff in error that he took the $2000 note from his father's papers and destroyed it, but the defense was that his father gave him the note. Defendant in error denied it was ever given plaintiff in error, and also sought to prove that at the time it was claimed the gift was made John Thrash was not of sound mind, and on this question witnesses were introduced and testified on both sides.

John Thrash prior to his death resided on his farm near Tolono, Illinois. He had no wife. His five children,—three sons and two daughters,—were all married and living in homes of their own. Thrash lived with a tenant who occupied the farm. He was the owner of considerable land and personal property. At the time of his death he was about eighty years old. Prior to his death he was afflicted, as we understand for a considerable period, with inflammation of the prostate gland. About May 9, 1916, he contracted pneumonia and was very ill for ten or fifteen days. On May 10 J. P. Crawford, a male nurse, was employed to nurse and care for the patient during his illness. Crawford testified that Perry Thrash, plaintiff in error here, came to the home of John Thrash on May 10 and was also there the next day. On one of those days plaintiff in error told Crawford his father had a book he wanted to give plaintiff in error and asked Crawford if he had heard his father say anything about it. Crawford said he had not. Later plaintiff in error asked his father about it but the father made no reply. The fourth or fifth day Crawford

was caring for Thrash plaintiff in error asked his father if he wanted to give him the book. Crawford suggested to the father that if he had any business he wished to turn over to his son he might as well do it. Thrash then told his son to get the key out of his pocket-book and open a trunk, which plaintiff in error did. He took a small brownback book out, held it up, and Thrash said that was the book. Witness did not know what the book contained. Thrash said it had a list of his business accounts in it and told plaintiff in error to take it to the bank and that Allen (meaning Bower, who is the defendant in error here,) would put it in his box with his papers, and that the plaintiff in error and Allen would have to look after his (the father's) business.

Bower testified that about a week before May 15, 1916, plaintiff in error came to the bank and said his father had told him he wanted him (plaintiff in error) to take charge of his business, loan his money, pay his bills and act generally as his agent, and had told him to take the key to his (the father's) box in the bank and get the papers. In that conversation, as we understand the testimony, plaintiff in error told the banker his father had given him the $2000 note, which appears to have been with the father's papers in the box he kept in the bank. The banker told plaintiff in error he had better have his father say something about the gift before witnesses, as the transaction might be questioned. Plaintiff in error said he could not do that as it might start some trouble and he did not want anybody to know about it. The banker then advised him to take the note out and get his father to indorse it. Plaintiff in error said he would not like to do that,—that it was no one's business but his and his father's and he was not going to bother about it. On May 15, 1916, the banker had another conversation with the plaintiff in error. On that day he brought a little book to the bank and said he wanted his father's papers. The banker got the box containing the

papers and gave them to him. He unlocked the box, took out the notes belonging to his father and said he was going to take the $2000 note his father had given him and wanted to leave something to show why he took it. The banker drew up the following receipt, which plaintiff in error signed and left with the banker:

"$2000.          ·                    TOLONO, ILL., *May 15, 1916.*

"I have received of the Bank of Tolono a note signed by myself, payable to John Thrash, dated Apr. 11, 1908. I have taken this note at the request of my father, who desired that I should have it.                    PERRY THRASH."

In October, 1916, plaintiff in error filed a petition in the county court of Champaign county alleging his father was a feeble-minded person and was the owner of a large amount of property, and praying that he be appointed conservator for his father. The father was adjudged incapable of taking care of his property, and Edward L. Brya was appointed conservator to care for his person and manage his property. He demanded of plaintiff in error the $2000 note, but he refused to deliver it up and said he had destroyed it, whereupon this action was brought. The cause was submitted to the court without a jury.

The testimony we have above set out in substance is all the testimony bearing on the question of the gift of the note to plaintiff in error except the testimony of Samuel W. Telford. He testified he was employed by plaintiff in error to take Crawford's place as nurse between the 25th and 28th of August, 1916; that plaintiff in error had told him prior to that time that his father had given him a $2000 note; that while he was with John Thrash he (witness) told Thrash plaintiff in error had said his father had given him a $2000 note, and that Thrash said he did; that plaintiff in error had done more for him and stuck to him when the other children did not, and he felt like doing more for him than he had done.

The will of John Thrash was introduced in evidence, in which the testator said he had given his sons Perry and

William all he wished them to have of his estate, and all his property was given to his other children. The will was executed October 31, 1906.

Telford was impeached by the testimony of G. A. Garrison, who testified that between the time the case was first set for trial (at which term Telford was present as a witness for plaintiff in error) and the term the case was tried, he (Garrison) saw Telford and told him he came to see him at the instance of some of the children of John Thrash to find out what he knew about the case. Telford said he did not know anything that would do either side any good. Garrison asked Telford if John Thrash ever said anything to him about the $2000 note, and Telford said no, he never heard him say anything about it. Telford had previously denied, while on the witness stand, that he had any such conversation with Garrison.

The Appellate Court said in its opinion: "Leaving out of consideration the mental condition of John Thrash at the time when the gift of the note is alleged to have been made, there is no conflict in the evidence. The case was tried before the court, who saw and heard the witnesses, and a finding on the facts, if the evidence had been conflicting, would not be disturbed by this court unless clearly contrary to the manifest weight of the evidence, but the record before us presents only the question of law whether the facts proven are sufficient to establish a gift of the note in question." It was the view of that court, expressed in its opinion, that the evidence clearly showed plaintiff in error became possessed of the note by virtue of the request of his father that he take possession of his papers and in conjunction with Bower, the banker, manage the father's business while he was sick; that this agency or trust established a fiduciary relation and placed the burden upon plaintiff in error to prove all the essential elements to a valid gift, and that the proof failed to show such gift.

Counsel for plaintiff in error contend that the judgment of the trial court was the result of its finding that the facts proved a valid gift of the note, and the Appellate Court's judgment was the result of its finding the facts different from the trial court,—that is, that there was no gift proved,—and that the Appellate Court had no power to reverse the judgment without remanding the cause without making a finding of facts, which the Appellate Court failed to do but reversed the judgment and rendered judgment in that court for defendant in error. The law requires that certain facts shall be proved to establish a valid gift, and unless facts are proved which meet the requirements of the law to establish a valid gift the gift cannot be sustained. The trial court held the necessary facts were proven. The Appellate Court held they were not proven and for that reason reversed the judgment. While the proof upon the subject of the gift was not conflicting the trial court held it was sufficient to establish the gift, but the Appellate Court held it was not. That court found the ultimate facts different from the finding of the trial court. Its judgment was the result of finding the facts different from the trial court, and it should have made a finding of facts in accordance with the provisions of section 120 of the Practice act. *Woodbury* v. *United States Casualty Co.* 284 Ill. 227.

The judgment of the Appellate Court is reversed and the cause remanded to that court, with directions that if that court is of opinion the judgment of the trial court be reversed and the cause not remanded, to make and recite in its final judgment a finding of the ultimate facts found by that court. *Reversed and remanded, with directions.*