HOSTS, INC., Defendant-Appellant,

v.

Milo WELLS & Pauline Wells, Plaintiffs-Appellees.

No. 3–981A236.

Court of Appeals of Indiana, Third District.

Dec. 20, 1982.

George T. McNaughton, Fremont, for defendant-appellant.

Edgar A. Grimm, Grimm & Grimm, P.C., Auburn, for plaintiffs-appellees.

GARRARD, Judge.

Mr. and Mrs. Wells (creditors) brought suit upon a promissory note executed and delivered to them by Hosts, Inc. (Hosts) in exchange for the transfer of some common stock to a wholly owned subsidiary of Hosts. The note was in the principal amount of $5,000 payable with interest at 8% per annum. There was no provision in the note authorizing the recovery of attorneys' fees if the maker defaulted.

Subsequently, the court granted summary judgment to the creditors awarding them judgment for $5,000 principal, $1,800 attorney fees and interest at the statutory rate from and after December 1, 1980.

Hosts' appeal challenges the propriety of summary judgment as to the principal debt and asserts the award of attorney fees is contrary to law.

On February 19, 1981 the creditors served requests for admissions pursuant to Indiana Rules of Procedure, Trial Rule 36 which covered the necessary elements for recovery upon the promissory note. Hosts neither answered nor objected to the requests within thirty (30) days and the matters were thus deemed admitted. TR 36(B); *Pathman Const. Co. v. Drum-Co. Engineering Corp.* (1980), Ind.App., 402 N.E.2d 1. Furthermore, Hosts did not petition to be relieved of the admissions as provided for in TR 36(B). On the basis of the admis-

sions, summary judgment was proper on the note.

■ However, as previously pointed out the note contained no provision for attorney fees. The trial court nevertheless awarded the creditors eighteen hundred dollars ($1,800) attorneys' fees which it taxed as costs in the action. It did so on the theory that prior to the year 1607 attorneys' fees were recoverable as costs in England pursuant to the Statute of Gloucester enacted by Parliament in 1278.[1] The court reasoned that the provision thus became a part of Indiana law by virtue of the Common Law Reception Statute (IC 1–1–2–1(4)) enacted by the Indiana General Assembly in 1818.[2]

The argument is fetching, but ignores Indiana's adherence to the general rule that in the absence of express agreement or special statute a successful litigant is not entitled to recovery of his attorney fees.[3] *Trotcky v. Van Sickle* (1949), 227 Ind. 441, 85 N.E.2d 638; *Gavin v. Miller* (1944), 222 Ind. 459, 54 N.E.2d 277; *Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127; *Templeton v. Sam Klain & Son, Inc.* (1980), Ind.App., 400 N.E.2d 1198; *Bd. of Aviation Commr's. v. Schafer* (1977), 174 Ind.App. 59, 366 N.E.2d 195; *Honey Creek Corp. v. WNC Development Co.* (1975), 165 Ind.App. 141, 331 N.E.2d 452; *Palace Pharmacy, Inc. v. Gardner & Guidone, Inc.* (1975), 164 Ind.App. 513, 329 N.E.2d 642; *St. Joseph's College v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865; *Groves v. Wiles* (1891), 1 Ind. App. 174, 27 N.E. 309; cf. *Chandler v. Chandler* (1859), 13 Ind. 492. Contrary to the position taken by the dissent, these cases must be evaluated from the perspective that the reception statute was in force when they were decided. It is unfortunate that none of them considered the potential impact of the Statute of Gloucester but they do not thereby become less the common law of this state.

■ The Supreme Court of Indiana is the central source for declaring the law of Indiana. *Troue v. Marker* (1969), 253 Ind. 284, 252 N.E.2d 800. It is properly empowered to alter, amend or abrogate the common law when the needs of our society dictate. *Brooks v. Robinson* (1972), 259 Ind. 16, 284 N.E.2d 794. In applying that power the court has had cause to construe the reception statute. It is a declaratory enactment.

"As viewed by this court, it was not the purpose of the legislature by this section to adopt the rules of the common law as announced and applied by the courts of England prior to 1607, but that the purpose was to adopt the general principles of the common law which underlie and control all rules of decision throughout all time, as the same were affected by the acts of the British Parliament passed in aid thereof prior to the time mentioned.

\* \* \* \* \* \*

From this common law system, and from the usages, customs and maxims upon which it is founded, innumerable rules

---

1. The dissent would justify $500 of the attorney fee award as a sanction for failing to make discovery pursuant to TR 37. No motion for such an award was filed by Wells nor was a hearing had as contemplated by TR 37(A)(4). In its original judgment the court simply awarded $1800 attorney fees. In ruling on Hosts' motion to correct errors the court for the first time stated it could award attorney fees for abuse of discovery and that of its $1800 award it would allocate $500 to abuse of discovery. The order, however, did not amend the prior judgment. Instead it denied the motion to correct errors and in its entirety. Furthermore, Wells have not argued on appeal that this is an alternative ground to affirm a portion of the award. *See* TR 59(G). Accordingly, we find there has been no issue presented concerning an award pursuant to TR 37.

2. *Chicago, etc. Ry. Co. v. Luddington* (1910), 175 Ind. 35, 91 N.E. 939 asserts the common law has been in force by statute in Indiana since 1807. The present reception statute refers to "the common law of England, and statutes of the British Parliament made in aid thereof prior to the fourth year of the reign of James the First."

3. We are not here concerned with the further exceptions narrowly made for "obdurate behavior," the "common fund," or the "private attorney general." *See St. Joseph College v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865.

and principles emanated, as the courts from time to time declared what they understood to be the correct law applicable to the matter before them and such law was determined by a system of reasoning and of administering justice consistent with the universal usages, customs and institutions of the English people. The common law grew to be a system of applying to litigated instances, just, reasonable and consistent rules of decision, suitable to the genius of the people and to their social, political and economic conditions and the system once established has never changed."

*Ketelsen v. Stilz* (1916), 184 Ind. 702, 705–07, 111 N.E. 423, 424–25.

■ Thus, while our courts could have applied the Statute of Gloucester to award attorneys' fees as costs in certain cases through the reception statute, they were also fully authorized to reject its application through the vitality principle of the common law which was also embodied in the reception statute. It is implicit in the decided cases that this was done in our acceptance of the general policy that a litigant pay his own counsel fees. The court was in error in awarding attorney fees as costs.

■ Finally the creditors argue that the award of attorney fees may be sustained upon the basis of their requests for admissions. We disagree under the circumstances here presented. The creditors filed their complaint in two pleading paragraphs. In count 1 they pleaded the promissory note for $5,000 which was executed and delivered by Hosts and which contained no provision for attorney fees. It was on this count that the court entered summary judgment in their favor and upon which this appeal was taken.

Count II alleged that the note in question should have been in the principal amount of $5,250 and should have been payable with attorney fees. The court granted summary judgment [4] for Hosts on this count and no appeal from that ruling was taken. Accordingly, the creditors have not preserved for appellate review the question of whether the note should have been reformed to include attorney fees.

The court's award of attorney fees is vacated and the summary judgment against Hosts for $5,000 with interest from December 1, 1980 is otherwise affirmed.

Modified and affirmed.

HOFFMAN, P.J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent because the trial court's award of attorney fees was proper. The attorney fees were awarded pursuant to the Statute of Gloucester, enacted by the English Parliament in 1278,[1] and adopted in Indiana by

---

**4.** The court in its ruling considered matters outside the pleadings and dismissed the second count with prejudice pursuant to Hosts' motion under TR 12(B). The parties correctly characterized the court's action as a grant of summary judgment. *See* TR 12(B).

**1.** 6 Edward I, c 1, § 1, 2 provided:

"Whereas *heretofore Damages were not awarded in Assises of* Novel *disseisin, but only against the Disseisors:* it is provided, That if the Disseisors do aliene the Lands, and have not whereof there may be Damages levied, that they to whose Hand such Tenements shall come, shall be charged with the Damages, so that every one shall answer for his Time. It is provided also, That the Disseisee shall recover Damages in a Writ of Entry, upon *Novel desseisin* against him that is found Tenant after the Disseisor. It is provided also, that where before this Time

Damages were not awarded in a Plea of *Mortdauncestor* (but in case where the Land was recovered against the chief Lord) that from henceforth Damages shall be awarded in all Cases where a Man recovereth by Assise of *Mortdauncestor,* as before is said in Assise of *Novel disseisin:* And likewise Damages shall be recovered in Writs of *Cosinage, Aiel,* and *Besaiel.*

"*And whereas before Time Damages were not taxed, but to the Value of the issues of the Land;* it is provided, That the Demandant may recover against the Tenant the Costs of his Writ purchased, together with the Damages abovesaid. *And this Act shall hold Place in all Cases where the Party is to recover Damages.* And every Person from henceforth shall be compelled to render Damages, where the Land is recovered against him upon his own Intrusion, or his own Act." (Emphasis added.)

the Common Law Reception Statute, first enacted by the General Assembly in 1818.[2]

The general rule is that attorney fees are not recoverable as a cost by the prevailing party, whether in law or equity, unless there is a statute authorizing such an award or an enforceable agreement or stipulation providing for such an award. *Alyeska Pipe Line Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141; *Fleischmann Distilling Corp. v. Maier Brewing Co.* (1967), 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475. Indiana adheres to this general rule. *Trotcky v. VanSickle* (1949), 227 Ind. 441, 85 N.E.2d 638, 640. Equity allows limited exceptions to the general rule denying the award of attorney fees. *Sprague v. Ticonic Nat'l Bank* (1939), 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184. These three equitable exceptions allow the award of attorney fees absent statutory authorization. They are 1) the "obdurate behavior" situation where the courts impose costs on defendants who behaved in bad faith; 2) the "common fund" situation; and 3) the "private attorney general" situation which has been abolished by the *Alyeska Pipe Line* case. *Umbreit v. Chester B. Stem, Inc.* (1978), Ind.App., 373 N.E.2d 1116, 1119.

Unlike equity, attorney fees were not awarded as costs at common law. *Mattis,* "Attorney's Fees as Costs in Illinois: 1607 and All That," (1979), S.Ill.U.L.J. 249, 252. Attorney fees could be recovered, however, in a judgment for damages when the trial court found either that the plaintiff had sued "pro falso clamore" or that the defend-

ant had acted "in misercordia." Essentially, a losing plaintiff was subject to a fine for bringing a false claim and a losing defendant was subject to a fine for his unjust retention of the plaintiff's rights. *Mattis,* at 252.

In 1278, Parliament expanded the common law rule by passing the Statute of Gloucester which allowed the winning party to recover costs "in all Cases where the Party is to recover Damages." 6 Edward I Cl. § 2 (1278); *Goodhart,* "Costs," (1929), 38 Yale L.J. 849, 852. Sir Edward Coke explained that by 1607 the common law courts interpreted the statute broadly so that it "extendeth to all the legall costs of suit...," including attorney fees. Sir Edward Coke, *The Second Part of the Institutes of the Lawes of England,* 288 (1642), *Goodhart* at 852 fn. 14; *Fleischmann Distilling Corp. v. Maier Brewing Co.,* (1967), 386 U.S. 714, 717 fn. 7, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475. So, by 1607, prevailing litigants in damage actions at law were entitled to recover attorney fees as costs at the common law.

In 1818, the General Assembly passed the Common Law Reception Statute which adopted the English common law as it existed in 1607.[3]

The common law adopted in Indiana consists of the judicial common law and the Acts of Parliament prior to the fourth year of James I except where modified or abrogated by Indiana constitutional or statutory provisions. *Sopher v. State* (1907), 169 Ind. 177, 81 N.E. 913; *Buchanan v. Hubbard*

Although the statute expressly contemplated only the real actions and possessory assizes, it was interpreted as applying to all actions for damages at Law. *Mattis* became obsolete in the 15th century with the rise of trespass and trespass on the case. See: Maitland *Forms of Action at Common Law* Cambridge, 1936.

2. The Common Law Reception Statute has been codified at Indiana Code 1–1–2–1(4). Since 1807 the common law has been in force in this State by virtue of legislative enactment. *Chicago & E.R. Co. v. Luddington* (1910), 175 Ind. 35, 93 N.E. 273. Ind.Code 1–1–2–1(4) provides:

"The common law of England, and statutes of the British Parliament made in aid thereof

prior to the fourth year of the reign of James the First (except the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth, and the ninth chapter of thirty-seventh Henry the Eighth,) and which are of a general nature, not local to that kingdom, and not inconsistent with the first, second and third specifications of this section." (Footnote omitted.)

3. This Indiana statute is identical to the statute passed by the General Convention of the colony of Virginia in May 1776. The statute was re-enacted in the Indiana territory by an Act of September 7, 1807 before it was enacted by the General Assembly in 1818.

(1889), 119 Ind. 187, 21 N.E. 538. Unless a statute exists to the contrary, the State of Indiana is governed by the common law of England as provided by the Reception Statute. *Anderson Federation of Teachers v. School City of Anderson* (1970), 252 Ind. 558, 254 N.E.2d 329, 330, *cert. denied,* 399 U.S. 928, 90 S.Ct. 2243, 26 L.Ed.2d 794. If statutory or constitutional repeal or modification is not shown, then the courts will apply the common law and statutes passed in aid of the common law. A statute will be held to abrogate the common law only when such an intention is declared expressly or by necessary implication. *City of Indianapolis v. Indianapolis Water Company* (1916), 185 Ind. 277, 113 N.E. 369, 372.

By enacting the Reception Statute, the General Assembly clearly intended to enact the common law. A review of the statutory enactments of the General Assembly shows that no statute has been enacted to repeal or modify the common law rule allowing successful litigants to recover attorney fees as costs. I am bound to conclude, therefore, that the trial court acted properly by awarding attorney fees as costs.

Although the reliance on the Reception Statute presents a novel question of law, the language of the Reception Statute is clear and unambiguous. The Statute of Gloucester, as enforced in 1607, was adopted as the law of Indiana in 1818. Indeed, the General Assembly expressly refused to adopt a statute passed by the English Parliament in 1601 which partially repealed the Statute of Gloucester.[4] When the General Assembly has made its intention clear and when the language of a statute is unambiguous, this Court may not construe the statute. *Indiana State Highway Commission v. Indiana Civil Rights Commission* (1981), Ind.App., 424 N.E.2d 1024, 1030 (*trans. denied.*) The power to enact and repeal statutes is vested in the General Assembly; we must act pursuant to its statutory mandate under the separation of powers doctrine.

The Majority considers it as "unfortunate" that prior Indiana cases have never considered the potential impact of the Statute of Gloucester. The Majority then deduces that these cases have impliedly rejected the Statute's application. I believe a more logical deduction is that these prior Indiana cases were based on the mistaken assumption that there was no authority for the award of attorney fees as costs.

Although the Statute of Gloucester seems to have been overlooked in the courts, it nevertheless remains in full force and effect as positive, statutory law in Indiana. While it is clear that the General Assembly has not repealed the Statute of Gloucester either expressly or by implication, it is equally clear that the Statute has not lost its force as positive, statutory law through either disuse or nonenforcement. The civil law doctrine of desuetude, which provides that the nonuse or nonenforcement of a statute causes it to be repealed as positive law, never has been adopted in Indiana. *Shutt v. State* (1909), 173 Ind. 689, 89 N.E. 6; *District of Columbia v. John R. Thompson Co.* (1953), 346 U.S. 100, 113–15, 73 S.Ct. 1007, 1014–1015, 97 L.Ed. 1480; *Rogers and Rogers,* "Desuetude as a Defense," 52 Iowa L.Rev. 1 (1966). The awarding of attorney fees as costs would not alter the rule in Indiana that attorney fees may not be recovered as costs in the absence of a statute or enforceable contractual provision or stipulation providing therefor. The Reception Statute has been the law in Indiana since 1807, and has been re-enacted in 1818, 1852, and 1976.

Assuming *arguendo* that the entire attorney fee award of $1,800.00 was not proper under the Statute of Gloucester, the Wellses are still entitled to the $500.00 which the trial court awarded them as a sanction for Hosts' failure to make discovery. The Majority does not address this issue.

The original judgment awarded the Wellses $1,800.00 in attorney fees "for necessary legal services furnished..." by their

---

**4.** Indiana Code 1–1–2–1(4) expressly refused to adopt in Indiana 43 Elizabeth I C. 6 § 2 (1601) which repealed the Statute of Gloucester as to civil actions in which the winning party failed to recover more than forty shillings.

attorney. Hosts argued in its motion to correct errors that $1,800.00 was an excessive attorney fee award. In ruling on Hosts' motion, the trial court allocated the $1,800.00 as $1,300.00 under the Statute of Gloucester and $500.00 as a sanction under Ind.Rules of Procedure, Trial Rule 37(B).

A judgment awarding attorney fees against a party failing to make discovery is proper if the trial court reasonably could have found that the recusant party had refused in bad faith to make discovery. *Clark County State Bank v. Bennett* (1975), 166 Ind.App. 471, 336 N.E.2d 663, 668. Bad faith means that there is a failure to comply with a duty imposed under the discovery order. *Id.* The purpose of TR. 37 is to facilitate discovery without the necessity of the trial court's involvement. *State v. Kuespert* (1980), Ind.App., 411 N.E.2d 435, 437. A trial court may award costs and expenses when a party must go to the trouble of obtaining a trial court's intervention to compel discovery. *Id.* A trial court exercises judicial discretion in ruling upon discovery matters, and this Court will interfere only upon a showing that the trial court abused its discretion. *Justak v. Bochnowski* (1979), Ind.App., 391 N.E.2d 872, 876, *cert. denied,* 449 U.S. 828, 101 S.Ct. 92, 66 L.Ed.2d 31.

A review of the record shows that Hosts failed to promptly plead its defenses against the Wellses and promptly make discovery. Therefore, the trial court's judgment awarding attorney fees as a sanction for failure to make discovery is proper.