SAINT JOSEPH'S COLLEGE, THE BOARD OF TRUSTEES (CONTROL) OF SAINT JOSEPH'S COLLEGE, AN INDIANA CORPORATION, BOARD OF TRUSTEES OF THE SOCIETY OF THE PRECIOUS BLOOD IN THE UNITED STATES, AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY, TRUSTEE OF INDIANAPOLIS, INDIANA, HEREINAFTER REFERRED TO AS "THE COLLEGE" v. MORRISON, INC.

[No. 472A205. Filed October 29, 1973. Rehearing denied March 7, 1974. Transfer denied May 22, 1974.]

*Palmer C. Singleton, Jr.,* of Hammond, *Thomas B. Dumas,* of Rensselaer, for appellants.

*Lester Murphy, Jr., Murphy, McAtee, Murphy & Costanza,* of East Chicago, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Both parties appeal from a judgment awarding damages and attorney's fees to the Cross-Complainant, Morrison, Inc. (Morrison), who sought to enforce a single mechanic's lien for work done pursuant to a written subcontract and an oral contract for the construction of a project for the Cross-Defendants, Saint Joseph's College et al. (College).

We reverse and remand.

## FACTS

The facts and evidence most favorable to the judgment of the trial court are:

On October 31, 1961, College contracted with Superior Construction Company, Inc. (Superior), as general contractor to construct a student center building and faculty residence building on the College's campus at Rensselaer, Indiana.

Thereafter Morrison entered into a written contract with Superior for the purpose of installing the heating, cooling, plumbing, water main and sewer systems for the two buildings in accordance with the plans, specifications, and conditions of the general contract.

During the course of construction of the project, Morrison performed for the College certain "additional" services, such as repairing and replacing existing underground utilities which were damaged during the construction of the two new buildings, all of which were performed pursuant to a separate oral contract between Morrison and the College.

On January 29, 1964, Morrison filed a single notice of intention to hold a mechanic's lien against the real estate on which the improvements were constructed. Apparently the improvements constructed, consisting of a student center and faculty residence, were in close proximity to each other on the College campus. The notice stated $148,000 was due and unpaid for work in the construction and on its face made no distinction as to work done under the subcontract with Superior and the additional work performed directly for the College under the oral contract.

Subsequently, the instant suit was begun by one of the other subcontractors, and Morrison filed a cross-complaint in two paragraphs. The first paragraph sought compensation for the amount due under the subcontract; the second paragraph sought recovery for the extra work done under the oral contract with the College. Morrison sought attorney's fees and foreclosure of the mechanic's lien under the second paragraph, in addition to damages in the amount of $8,629.28 alleged to be due and owing.

Eventually, all claims of all parties, except Morrison's claim under Paragraph II, were settled and dismissed pursuant to stipulations of the parties.

The matter of the "additional" work which was in issue under the second paragraph of Morrison's Complaint was tried before the White Circuit Court sitting without a jury beginning October 27, 1970. The trial court heard evidence and spent considerable effort deciding which of these charges were contemplated by the written subcontract, and thus not separately compensable, and which charges were for work performed pursuant to the oral contract between College and

Morrison. The court's findings and judgment were entered on July 29, 1971.

The trial court found that two separate contracts existed: the written contract under which Morrison was a subcontractor, and the oral one under which Morrison had engaged in the "additional" work.

It also determined that Morrison did not have a valid mechanic's lien for the work done pursuant to the oral contract with the College.

Of the total amount of $8,629 sought under Paragraph II, the court found that invoices totaling $5,208 were for work which was properly a part of the subcontract, and thus not recoverable under Paragraph II of the cross-complaint. The remaining invoices, totaling $3,421, were held to represent work done under Morrison's oral contract with the College. To this amount the court added interest in the amount of $1,334 and attorney fees of $3,500.

Pertinent parts of the judgment are hereinafter set out verbatim.

Both parties filed Motions to Correct Errors. In ruling on them, the trial court reiterated its holding that no valid lien existed to support the oral contract for the additional work and stated that it awarded attorney fees in favor of Morrison under its general equity power to do justice between the parties.

Also the court refused to rule on whether or not a timely lien notice had been filed as to the oral contract because to do so would have no consequential effect.

From this judgment Morrison and the College have brought this appeal.

## ISSUES

ISSUE ONE. May attorney fees be awarded to a mechanic[1] seeking to enforce an invalid lien?

---

1. Throughout this opinion the term "mechanic" is used as defined in IC 32-8-3-1, Ind. Ann. Stat. § 43-701 (Burns 1972 Supp.).

ISSUE TWO.  Did the trial court commit an error of law in basing its judgment on the premise that a valid mechanic's lien cannot embrace work done under two separate contracts?

As to ISSUE ONE, College argues that absent statutory or contractual authorization, a court is powerless to award attorney fees to a mechanic seeking to enforce a non-existing lien, *i.e.*, no lien, no attorney fees.

Morrison answers that their mechanic's lien is valid because the single lien filed included the work under the oral contract and therefore supports an award for attorney fees; and further the trial court's holding that the lien was invalid was only a technicality, and that under these circumstances equity could intervene and grant the attorney fees which would otherwise have been awarded.

As to ISSUE TWO, College contends that under no circumstances may a single lien be filed to cover work done under two separate contracts.

Morrison answers that claims arising under the two contracts may be joined in a single lien, and that the lien filed was therefore valid.

Morrison asserts as an issue that the trial court improperly ruled that its mechanic's lien had been released by its release and settlement of its claims under Paragraph I of its cross-complaint. The issue arises, Morrison contends, from the following language in the judgment:

"Morrison, having compromised and made settlement of the issues under its Paragraph I and executed a Release cannot now prevail in its action on that Mechanic's Lien in its action against College."

Contradictory of any such release, Morrison says, is this language in the release and settlement:

"This instrument in no way releases a claim Morrison is asserting against College on a direct claim against College

on a contract with it. That claim remains pending as the second paragraph of the cross-complaint of Morrision in the above described action in the White Circuit Court."

College, however, interprets the court's words to refer only to a release of those invoices held to be a part of the written contract and not the oral contract. As we must construe the judgment of the trial court below in such a way as to support that judgment, if possible (Rule TR. 52(A), *Hiatt* v. *Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834, 842), we agree with College's interpretation and therefore find no issue for decision on appeal.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that attorney fees may not be awarded to a mechanic seeking to enforce an invalid lien, even though otherwise entitled to damages for breach of contract.

In general, mechanics' lien laws exist for the benefit of persons rendering services or furnishing machinery or material to the owner of land. While equitable in nature, such liens did not exist at common law. *Moore-Mansfield Construction Co.* v. *Indianapolis, New Castle & Toledo Ry. Co.* (1913), 179 Ind. 356, 101 N.E. 296. And one who would avail himself of the special remedies created under the law must bring himself within those statutory provisions. Although remedial in nature, these statutes are liberally construed only insofar as determining the remedies available to one who has already satisfied the strict provisions of the law. *See, Rudd* v. *Anderson* (1972), 153 Ind. App. 11, 285 N.E. 2d 836. Such statutes must be strictly construed in order to determine whether the mechanic qualified himself under the statute to receive the liberal remedies there available. *Puritan Engineering Corp.* v. *Robinson* (1934), 207 Ind. 58, 191 N.E. 141.

In Indiana the applicable provisions of the Mechanics' Lien

Law are contained in IC 32-8-3-14, Ind. Ann. Stat. § 43-707 (Burns 1965 Repl.), which provides:

"43-707. ATTORNEY'S FEES—WHEN DENIED.—*In all suits brought for the enforcement of any lien under the provisions of this act* [§§ 43-701—43-713, 43-717], *if the* plaintiff or *lienholder shall recover judgment in any sum, he shall also be entitled to recover reasonable attorney's fees,* which shall be entered by the court trying the same, as a part of the judgment in said suit, however, attorney fees shall not be recovered as part of the judgment against the property owner in any suit in which it is shown that the contract consideration for such labor, material or machinery has been paid, in fact, by the property owner or party for whom the improvement has been constructed." (Emphasis supplied.)

The unambiguous intent of the statute is that the lienholder-plaintiff is only entitled to recover attorney's fees if he is successful in securing a judgment for the enforcement of a valid lien as contemplated by the earlier sections of the Statute.

As the court found Morrison did not hold a valid, enforceable lien as to the oral contract, attorney's fees could not be awarded under this exclusive section of the Mechanics' Lien Statute. Morrison may have been entitled to judgment for damages for breach of contract, but such a judgment would not support the awarding of attorney's fees.

Indiana case law supports the reasoning that the Mechanics' Lien Law gives no right to recover attorney's fees to one who, although entitled to a judgment, is not entitled to foreclose a mechanic's lien. *See, Hammond Hotel and Improvement Co.* v. *Williams* (1931), 95 Ind. App. 506, 176 N.E.2d 154; *Todd* v. *Howell* (1911), 47 Ind. App. 665, 95 N.E. 279.

Having failed to bring itself within the terms of the Statute as to the awarding of attorney's fees for the enforcement of a valid lien, Morrison turns to the court's inherent equitable power to award attorney's fees regardless of the presence or absence of statutory authorization.

Equity cannot be so used:

"But in cases where the particular matter involved is governed by statute, that law is followed and equity cannot displace it. *The powers of equity must be exercised in accordance with the legal rights given to the parties by the mechanic's lien laws* and other laws, or in accordance with equitable rights arising out of their dealings with each other. Neither the conscience of the chancellor nor the length of his foot can supplement the statute and vest the court with any jurisdiction except that which is based upon the statute." 53 Am. Jur. 2d 875, *Mechanics' Liens*, § 349. (Emphasis supplied.)

The general rule in Indiana and in other states is that each party to the litigation must pay his own counsel fees. They are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance, and the rule applies equally in courts of law and in courts of equity. *Trotcky* v. *Van Sickle* (1949), 227 Ind. 441, 85 N.E.2d 638.

There are certain limited exceptions which exist to the general rule denying the awarding of attorney's fees. For example, Morrison cites the case of *La Raza Unida* v. *Volpe* (N. D. Cal. 1972), 57 F. R. D. 94, which succinctly summarizes the power of equity in this area:

"The *power* to grant attorneys' fees springs from the equitable powers of the court. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 166, 59 S. Ct. 777, 83 L. Ed. 1184 (1939). The basic issue in the present motion is whether plaintiffs have demonstrated that equity compels the awarding of fees in this case. Through the use of their equitable powers courts have carved out several exceptions to the American rule of *not* granting attorneys' fees absent statutory authorization. [Original emphasis.]

"1) The 'obdurate behaviour' situation. Here the courts use their equitable powers to impose costs on defendants who behaved in bad faith. See, *e.g.*, Kahan v. Rosenstiel, 424 F. 2d 161, 167 (3rd Cir. 1970), cert. denied, Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S. Ct. 1870, 26 L. Ed. 2d 290 (1970); Knight v. Auciello, 453 F. 2d 852 (1st Cir. 1972).

"2) The 'common fund' situation. Here the courts use their equitable powers to insure that the beneficiaries of litigation are the ones who share the expense. This is a defensive use of the equitable power of the courts to prevent the unjust enrichment of 'free riders'. See, *e.g.*, Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S. Ct. 777, 83 L. Ed. 1184 (1939).

"3) The 'private attorney general' situation. Here the courts use their power offensively when necessary and appropriate to insure the effectuation of a strong Congressional policy. See *e.g.*, Sims v. Amos, 340 F. Supp. 691 (M.D. Ala. decided March 17, 1972) ; *cf.* Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968)." 57 F. R. D., *supra*, at 96.

Neither the "common fund" nor the "private attorney general" situation could apply to the facts before us. Morrison evidently seeks to classify the action of College as "obdurate behaviour," or as constituting bad faith.

The conduct of College in refusing to pay a disputed claim is not bad faith, nor is the fact that judgment has been entered against it. 25 C. J. S. *Damages* § 50.

To the contrary, cases cited by Morrison demonstrate that the party's conduct must be vexatious and oppressive in the extreme before the court can impose special equitable sanctions.

For example, the appellants in *In re Swartz* (7th Cir. 1942), 130 F. 2d 229, agreed in 1936 to a plan of liquidation under the Bankruptcy Act. All other creditors filed their notes and received in lieu thereof "certificates of interest." After appellants refused to exchange their notes before the deadline, the court held that their claims were barred and yet they persisted in presenting their notes and demanding full face value therefor. Over a period of some five years, they filed thirty-two petitions seeking preferences over similarly situated creditors, all of which necessitated one hundred twenty-four court appearances by the trustee. In affirming the award of $1,000 in fees and expenses, the court stated: ". . . the ap-

pellants 'for several years have persistently, constantly and unlawfully interfered with, delayed and molested the trustee, and his counsel * * * in and with respect to the administration of this estate.' " *Swartz, supra* at 231.

Similar extraordinary circumstances were present in *Cleveland* v. *Second National Bank & Trust Co.* (6th Cir. 1945), 149 F. 2d 466, *cert. denied* 326 U.S. 775, 66 S. Ct. 231 (counsel fees allowed trustee because of unfounded charges of mismanagement brought "in harassing and futile litigation").

There is no showing of comparable circumstances here.

Even if the terms "bad faith" and "vexatious and oppressive conduct" were applicable to a simple contract dispute, the record indicates no discernible difference in the equitable standing of the parties. If, as Morrison would have it, the refusal of College to pay the $3,421 until it was ultimately adjudicated as due constitutes bad faith on the part of College, what shall we make of Morrison's persistent demand for the entire disputed amount, much of which ($5,208) was ultimately determined *not* to be warranted?

As there is no justification in law or equity for an award of counsel fees absent a valid mechanic's lien or the special circumstances indicated above, the trial court improperly awarded attorney's fees. It did so in the erroneous belief that a separate lien was necessarily required for enforcement of the lien arising from the oral contract.

However, as this case must be reversed and remanded for further proceedings, it is possible that the trial court will determine that a valid lien did exist—as the filing of two liens is not necessarily required to enforce two contracts with the same owner (as will appear more fully in our discussion of ISSUE TWO). The trial court may award counsel fees if a valid lien is found to exist to support the oral contract.

ISSUE TWO.

CONCLUSION—It is our opinion that the trial court's judgment that a valid mechanic's lien cannot embrace work done under two separate contracts is an erroneous conclusion of law.

Having decided that with rare exceptions a valid lien must exist to support an award of attorney's fees, our attention inescapably turns to the question whether a valid mechanic's lien could have existed based on the facts found by the trial court.

The underlying theory of the judgment is that because two contracts existed between College and Morrison they could not be incorporated into one mechanic's lien.

Indicative of the court's theory are these passages:

> "Morrison, Inc. instituted this action under the Indiana Mechanics Lien law to foreclose a Mechanics Lien. Through a technical error the lien attempted to embrace two separate and distinct contracts, and the Court so held in its findings."
> "IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that the Mechanics Lien filed by Morrison for work performed and materials furnished under its subcontract with Superior is not a valid and existing lien to be enforced for work performed and materials furnished under its separate and distinct contract with College."

The court's assumption that two contracts between a land owner and a mechanic cannot be incorporated into one mechanic's lien is an erroneous conclusion of law. By its findings and conclusions of law it has found and held that the oral contract necessarily could not be included in the lien filed by Morrison.

Unfortunately the court did not find the ultimate facts necessary to determine if a valid enforceable lien came into being as to the oral contract, i.e., whether it was included as part of the claim stated in the lien filed on January 29, 1964. In fact, the court specifically refused to enter findings whether a timely notice had been filed as to either contract.

Whether or not the notice was intended to cover both claims at the time it was filed, and, if so, whether the notice was sufficient to apprise College that the lien was being held for the two claims, has not yet been decided. The answer to this question of fact is not apparent on the face of the notice. Only the trial court can determine if the amount claimed in the notice ($148,000) included the invoices for work done under the oral contract. If it did, a valid lien for both contracts could have arisen—as will more fully hereinafter appear.

In order to ascertain if these two contracts or claims could be joined in a single lien, the parties and the trial court appear to have indulged in certain assumptions that seem justified by the record.

Although the findings and record do not expressly so indicate, the implications are that the two buildings are on one plot of real estate, that all "additional" work was done on the same plot, that the legal description in the notice described the identical parcel, and that all work was done pursuant to a common plan of improvement.

The trial court, not being limited to the abbreviated record which is before us on appeal, will doubtless be able to determine these and other relevant questions of fact in ultimately determining whether a valid lien existed as to the oral contract.

Mindful of these assumptions, the next step is to justify our conclusion that the trial court committed an error of law in deciding on the meager facts found that Morrison's lien necessarily could not include both the written and the oral contract.

The Indiana Mechanics' Lien Statute, Ind. Ann. Stat. § 43-701 *et seq.* (Burns 1965 Repl.)[2] does not prohibit as such

2. This is the statute in effect when the notice and complaint were filed. The statute was amended in 1967 and 1971, but these amendments are not here relevant. The act as presently amended may be found at IC 1971, 32-8-3-1 *et seq.*

the incorporation of two contracts into one lien. Relevant portions of the statute are:

"43-701. PERSONS ENTITLED TO LIENS — CONTRACTORS AND LABORERS—NO-LIEN CONTRACTS —NOTICE TO OWNER—INNOCENT PURCHASERS.— That contractors, subcontractors, mechanics, journeymen, laborers and *all persons performing labor or furnishing materials or machinery* for the erection, altering, repairing or removing any house, mill, manufactory, or other building, . . . or for construction, altering, repairing, or removing any . . . well, drain, drainage ditch, sewer or cistern may have a lien separately or jointly . . . on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished or either. . . ." (Emphasis supplied.)

"43-703. HOW OBTAINED—NOTICE—RECORDING FEE.—Any person who wishes to acquire a lien upon any property, whether his claim be due or not, shall file in the recorder's office of the county, at any time within sixty [60] days after performing such labor or furnishing such materials, or machinery, described in section 1 [§ 43-701] of this act, *verified notice* in duplicate of his intention *to hold a lien upon such property for the amount of his claim*, specifically setting forth the amount claimed, the name and address of the claimant and the name of the owner, and shall give legal description, street and number, if any, of such lot or land on which the house, mill, manufactory or other buildings . . . may stand or be connected with. . . ." (Emphasis supplied.)

The statute does not require a contractual basis for work done. On its face, it may fairly be interpreted as only requiring a mechanic to notify the land owner of the specific amount of his lien and the description of the real estate subject to the lien without regard to the existence or non-existence of any contractual relationship between the mechanic and the land owner.

Although a contract may be used to establish a prima facie case, the true basis of the lien is that the improvement was

made with the *consent* of the owner. *See, Prewitt v. Londeree* (1966), 141 Ind. App. 291, 216 N.E.2d 724; *Vorhees* v. *Beckwell* (1894), 10 Ind. App. 224, 37 N.E. 811.

In *Stephens* v. *Duffy* (1907), 41 Ind. App. 385, 83 N.E. 268, the court, in addressing itself to a different issue, characterized our statute:

"There are three classes of mechanics'-lien statutes in the United States, and the cases cited by appellants do not relate to the class which has been enacted in Indiana. These classes are: (1) Those which create a lien without regard to any contractual relation with the owner of the building or structure. . . . Our statute must be included in the first class. *It does not demand a contract relation with the owner.*" *Stephens, supra,* 41 Ind. App. at 389, 83 N.E.2d 268. (Emphasis supplied.)

Indiana cases on the subject of mechanic's liens fortify our construction of the statute.

In *Smith* v. *Newbaur* (1895), 144 Ind. 95, 42 N.E. 40, a materialman furnished materials to a contractor and also to a subcontractor on the same project. The materialman alleged two accounts in two bills of particulars, but the court held that the two accounts were ". . . in all essentials a single account of materials furnished for appellants' dwelling. . . ." *Smith, supra,* 144 Ind. at 101, 42 N.E. at 42. The claimant in *Smith* clearly entered into two distinct contracts with different parties, but the Appellate Court held that since all of the items were furnished for the same improvement upon one piece of property, in the contemplation of the law there was but a single account for the purpose of filing a single notice of intention to hold a mechanic's lien. *See also, Trueblood* v. *Shellhouse* (1898), 19 Ind. App. 91, 49 N.E. 47.[3]

---

3. The Appellate Court in *Trueblood* at 19 Ind. App. 97, 49 N.E. 47 uses language which purportedly limits the scope of application of *Smith* v. *Newbaur*. However, such language is contained in a discussion of the propriety of reviving an expired claim by tacking it to a more recent one. This is the context in which the *Trueblood* statement was cited in

In *Indiana Mutual Building & Loan Association* v. *Paxton* (1897), 18 Ind. App. 304, 47 N.E. 1082, the Appellate Court stated that, where materials were furnished from time to time to a single contractor, it was unnecessary to determine whether the materials were furnished under one continuous contract—a complaint to foreclose a mechanic's lien is good with respect to materials furnished for sixty days prior to filing of notice:

> "The law gives a lien for articles furnished at different times under different contracts as to such articles furnished within sixty days next preceding the filing of a notice of intention to hold a lien. *While the complaint does not aver that all the articles were furnished under one contract,* it does show that one item was furnished within sixty days of the filing of the notice. The complaint would, therefore, be good, at least as to the one sale, and a cause of action is stated, and appellees would be entitled to relief." 18 Ind. App. at 306, 47 N.E. at 1083. (Emphasis supplied.)

We perceive no valid public purpose in promoting multiple notices and foreclosures in situations where a single lien would suffice. While dealing with dissimilar fact situations, Indiana courts have nevertheless previously expressed a policy of avoiding needless multiplicity of proceedings.

Where, as here, the claimant installed underground pipes in a manufacturing complex of several buildings, the Appellate Court held that as the buildings, taken as a whole, constituted a plant with a common purpose, a single mechanic's lien could apply to the several buildings. *Premier Steel Co.* v. *McElwaine-Richards Co.* (1895), 144 Ind. 614, 43 N.E. 876. Similar reasoning has been applied where a joint lien was sought over a dwelling house and appurtenant buildings (*Crawford* v. *Anderson* (1891), 129 Ind. 117, 28 N.E. 314), and is applicable even where the appurtenant buildings were on a different lot than the main dwelling. *Northwestern Loan & Investment*

---

*Kendallville Lumber Co.* v. *Adams* (1931), 93 Ind. App. 141, 176 N.E. 555, and it is our opinion that it is only in the "tacking" situation that the caveat retains any vitality.

*Association* v. *McPherson* (1899), 23 Ind. App. 250, 54 N.E. 130. Likewise, a single lien has been upheld where additional work was done where such work was incidental to the main job. *Stephens* v. *Duffy, supra.* Finally, a single lien has been allowed to a contractor who built two houses on two lots pursuant to a single contract. *West* v. *Dreher* (1920), 73 Ind. App. 133, 126 N.E. 688.

These cases indicate an established policy of allowing joinder of claims in cases where such joinder will not prejudice the rights of the property owner.

In agreement with our interpretation of the statute is a decision in Connecticut, which has a mechanics' lien statute similar to ours. (*Also see Kendallville Lumber Co.* v. *Adams* (1931), 93 Ind. App. 141, 176 N.E. 555.) In *Parsons* v. *Keeney* (1923), 98 Conn. 745, 120 A. 505, 507, the Supreme Court of Errors of Connecticut considered the need for filing more than one lien if a mechanic performed work for the owner pursuant to more than one contract:

> "Let us turn to Gen. St. 1918, § 5217, and its requirements to see whether it forbids the plaintiffs from securing their claim by one certificate of lien, as they attempted to do. The section provides for subjecting land and the buildings thereon under certain conditions to a lien securing the value of the materials furnished and services rendered thereon, whereby a claim in favor of the contractor has been created. It is noticeable that the statute does not say that the claim must arise under one contract or from operations on one building. *Under the terms of the statute as we construe it, the claim which is the basis of a lien may arise under one contract or more than one contract.* It is common knowledge that in carrying out most building operations one or more subordinate contracts for extras are made. It would not be even suggested that each of these subordinate contracts should be dealt with as a basis for a separate lien. We must construe the statute fairly and reasonably, so as to give effect to the intention of the Legislature. The Legislature has not provided for a separate certificate for materials and services rendered by one party upon a lienable unit under each of several separate contracts, nor for separate certificates for lienable operations on each of several buildings.

It has only provided that there must be a lienable claim for materials and services rendered. *Where there is a lienable claim arising from distinct contracts as to the same lienable unit of land and buildings, and where these contracts are carried out in a continuous and overlapping employment, the fair and reasonable intent of the statute is to permit the builder to file a certificate of lien for the entire claim arising under all the contracts, . . . .*" (Emphasis supplied.)

Having correctly stated the law, the Connecticut court then proceeded to misapply the law to the facts. It confused two separate concepts, both of which concern the existence of two contracts between the mechanic and the land owner and may arise under our kind of a mechanics' lien statute.

The first concept involves the so-called "tacking" cases, which relates to the *timeliness* of the filing of the lien notice. The second concept examines the lien notice to see if it in all *other respects* conforms to the statutory requirements.

"Tacking" may best be illustrated by reciting the facts in *Kendallville Lumber Co.* v. *Adams, supra.*

The Lumber Company furnished materials to a contractor who was constructing Adams's house. On November 1, 1926, the contractor abandoned the contract and Adams subsequently authorized the Lumber Company to furnish directly to him the necessary materials to finish the house. On January 10, 1927, the Lumber Company filed its notice of intention to hold a mechanic's lien for all of the material furnished. The court found that two separate and distinct contracts existed. As the notice was not filed within sixty days of the time the materials were last furnished to the contractor, the lien was not good as to claims arising under the first contract.

"Under such circumstances, the latter contract was not a supplement to the former, but a new and independent contract, and a lien under the latter would not protect work done under the former. Appellant, by delaying to file its intention to hold a mechanic's lien within 60 days from the time it ceased to furnish materials to the contractor, lost its right to a lien for such materials, and *the two separate*

*and independent transactions of furnishing materials to the contractor and to Adams cannot be tacked together so as to revive that lost right given by statute,* or so as to extend the time for filing its intention to hold a lien for the materials furnished the contractor. Appellant, by its own delay, has failed to secure the benefit of the statute authorizing it to acquire the lien, and the court is without authority to enlarge its provisions." *Kendallville Lumber Co.* v. *Adams, supra,* 93 Ind. App. at 149-150, 176 N.E. at 558. (Emphasis supplied.) *See also, Ramsey* v. *Peoples Trust & Savings Bank* (1970), 148 Ind. App. 167, 264 N.E.2d 111; *Dix* v. *Willfred Coal Co.* (1921), 76 Ind. App. 511, 132 N.E. 595.

So, as these cases indicate, a subsequent contract cannot be used to "revive" a claim arising out of a prior contract that has been extinguished by the expiration of the sixty-day period. The joinder of claims arising out of two contracts is only forbidden as a means of reviving an extinguished right.

At one point in its judgment the trial court quoted language from *Dix* v. *Willfred Coal Co., supra* (see page 42 Appellants' Brief), which is a "tacking" case, lending credence to the supposition it may have considered "tacking" was attempted between the two contracts, but no facts are found in support of any such conclusion.

The trial court's judgment does not find facts sufficient to justify a holding that "tacking" rendered the lien invalid, nor does it find facts sufficient to determine if the lien filed was timely and that it was in other respects in conformity with statutory requirements.

On the state of the record and the inconclusive findings in the judgment, our decision can only be that the existence of more than one contract does not necessarily bar proceedings on a single mechanic's lien.

On remand, the trial court may or may not determine that a valid lien existed to support an award of counsel fees. Only the trial court can unwrap this factual cocoon.

We therefore reverse and remand this case to the trial court to determine if:

(a) the lien notice included a claim for the work performed by Morrison pursuant to the oral contract;

(b) the lien notice was timely filed and in other respects in conformity with statutory requirements;

and for other proceedings not inconsistent with this opinion.

Reversed and remanded for further proceedings.

Sullivan and White, JJ., concur.

NOTE.—Reported at 302 N.E.2d 865.