Rosella M. STECH, as Personal Representative of the Estate of Merrill F. Stech, Deceased and Rosella M. Stech, Appellants (Defendants Below),

v.

The PANEL MART, INC., Appellee (Plaintiff Below),

and

William B. Thomas, Marilyn M. Thomas, David Hughes and Elizabeth Hughes, Appellees (Third-Party Defendants Below).

No. 3–381A88.

Court of Appeals of Indiana, Third District.

April 20, 1982.

Ralph R. Blume, Blume, Wyneken, Bullman & Connelly, Thomas J. Dixon, John M. Whitmore, Jr., Nieter, Dixon, Whitmore, Myers & Koehlinger, Fort Wayne, for appellants.

Sherrill Wm. Colvin, John O. Feighner, Snouffer, Haller & Colvin, Fort Wayne, for appellees.

HOFFMAN, Presiding Judge.

Rosella Stech, as representative of the estate of Merrill F. Stech and in her own behalf, appeals the trial court's order to sell 100 shares of stock to The Panel Mart, Inc. for the price of $25,000 in accordance with a Stock Purchase Agreement. The dispositive issues concern the proper interpretation of the Stock Purchase Agreement and the admission of parol evidence to explain the intention of the parties. Stech also asserts that she is entitled to attorney fees due to the obdurate conduct of the corporation, its officers, and directors.

On or about May 22, 1969 all of the shareholders of The Panel Mart, Inc. signed a Stock Purchase Agreement. The shareholders, and number of shares owned, were:

| | |
|---|---|
| William B. Thomas | 50 shares |
| Marilyn M. Thomas | 50 shares |
| David L. Hughes | 100 shares |
| Merrill F. Stech and | |
| Rosella M. Stech | 100 shares. |

The recital section of the Stock Purchase Agreement set out the intentions of the parties:

"WHEREAS, the stockholders mutually desire to enter into an agreement by which, on the event of the death of one of them, the ~~survivors~~ company shall purchase and the decedent's estate and heirs shall sell the stock of said corporation owned by the decedent at the time of his death at a price predetermined by such agreement, or, on certain events, at a price determinable in accordance with such agreement[.]"

The term "survivors" had been crossed out and the handwritten term "company" substituted. The operative portions of the agreement provided conditions for sale or assignment of stock during the lifetime of the shareholders. The operative provisions also called for the purchase of insurance on the lives of William B. Thomas, David L. Hughes and Merrill F. Stech. The Panel Mart was to be the owner and beneficiary named in the life insurance policies. The proceeds from these policies were to be used "to provide ready funds with which to finance the purchase contemplated."

Merrill Stech died on October 12, 1976. On January 11, 1977, The Panel Mart delivered to attorney Arthur Wright two checks totaling $25,000 to be used for the purchase of the 100 shares of stock owned by the Stechs. Attorney Wright, at that time, represented the corporation, the shareholders, and the Stech estate. The $25,000 represented a purchase price of $250 per share in accordance with the value of the stock which had been established at a shareholders' meeting prior to Merrill's death. Rosella refused to complete the sale.

On October 6, 1977, The Panel Mart filed a complaint against Rosella and the Stech estate asking for a declaratory judgment establishing the terms of the stock agreement and for an order requiring Rosella to sell the 100 shares of stock to the corporation for $25,000. Rosella and Merrill's estate filed a counterclaim. For the purpose of this appeal, the only relevant issue raised in the counterclaim is whether Rosella should have been awarded attorney fees due to the obdurate behavior of the corporation in refusing to pay sums owed to her and the estate.

The trial court found that the Stock Purchase Agreement was ambiguous because:

"(a) it purports in its preamble to provide for a procedure to be followed in the event of the death of a principal, yet contains no provisions thereafter in the event of death;

(b) it is ambiguously interlined to substitute 'company' for 'survivors.' "

Parol evidence was admitted to show that the agreement had been intended to prevent any of the wives from becoming an active partner in the business in the event that one of the men died. The trial court specifically found that the agreement was intended: 1) to provide a procedure to be followed in the event of the death of any of the men and 2) to make the company the appropriate entity to enforce the Stock Purchase Agreement. The trial court ordered Rosella to sell the 100 shares of stock to The Panel Mart for the sum of $25,000. Additionally, the trial court awarded the estate $36,250 but denied Rosella's claim for attorney fees.

Initially, it is necessary to determine what part recitals, or "whereas" clauses, play in the interpretation of a contract. In *Irwin's Bank v. Fletcher, etc., Trust Co., Rec.* (1924), 195 Ind. 669, at 694, 145 N.E. 869, at 877, the Indiana Supreme Court stated:

"The preliminary recitals in a contract may be persuasive in determining the intention of the parties thereto when the language expressing their contractual relations is ambiguous, uncertain and indefinite, but they should never be allowed to control, as here, the clearly expressed stipulations of the parties."

Citing *Irwin's Bank, supra*, the Indiana Supreme Court in *Kerfoot v. Kessener* (1949), 227 Ind. 58, at 79, 84 N.E.2d 190, at 199 held:

"The preliminary recitals of the contract may be of some value, but they are not contractual, and can not be permitted to control the express provisions of the contract which are contractual in nature."

The first rule in the interpretation of contracts is to give meaning and effect to the intention of the parties as expressed in the language of the contract. *Boswell v.*

*Lyon* (1980), Ind.App., 401 N.E.2d 735. In ascertaining the intention of the parties, a court must construe the instrument as a whole, giving effect to every portion, if possible. *Linton v. Linton* (1975), 166 Ind. App. 409, 336 N.E.2d 687, *rehearing denied* 166 Ind.App. 409, 339 N.E.2d 96. With similar principles in mind, recent cases from foreign jurisdictions have elaborated upon the effect of recitals in the interpretation of a contract. Generally, recitals may be read in conjunction with the operative portions of a contract to ascertain the intention of the parties.

" 'If the recitals are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous and the operative part is clear, the operative part must prevail. If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part is to be preferred.' "

*Maddux & Sons v. Trustees of Ariz. Laborers* (1980) 125 Ariz. 475, at 478–479, 610 P.2d 477, at 480–481 quoting *Williams v. Barkley* (1900) 165 N.Y. 48, at 57, 58 N.E. 765, at 767.

*See also* 17 Am.Jur.2d *Contracts* § 268 (1964); 17A C.J.S. *Contracts* § 314 (1963). Where the intention of the parties is not clear from the operative portion of the contract, the recitals must be considered in determining that intention. *Schnitt v. McKellar* (1968) 244 Ark. 377, 427 S.W.2d 202.

"A recital is a part of a contract which should be considered in determining the intent of the parties as expressed in the entire document, and on occasion a recital may be a most important indication of the parties' intent."

*Bowen v. Sil-Flo Corporation* (1969) 9 Ariz.App. 268, at 277, 451 P.2d 626, at 635 citing *Employer's Liability Assurance Corporation v. Lunt* (1957) 82 Ariz. 320, 313 P.2d 393.

In the present case, the operative portions of the Stock Purchase Agreement provide for insurance policies on the lives of William B. Thomas, David L. Hughes and

Merrill F. Stech. The Panel Mart was to be the owner and beneficiary of the policies. The purpose of the policies was to "provide ready funds with which to finance the purchase contemplated." The only purchase referred to in the operative portions of the agreement, however, concerns the sale of stock during the lifetime of a shareholder. Inasmuch as the life insurance policies could "provide ready funds" for a purchase only in the event of the death of an insured, the operative portions of the Stock Purchase Agreement are ambiguous. It is therefore necessary and proper to examine the recitals in order to ascertain the intention of the parties.

The recital which clearly establishes the intention of the parties is as follows:

"WHEREAS, the stockholders mutually desire to enter into an agreement by which, on the event of the death of one of them, the ~~survivors~~ company shall purchase and the decedent's estate and heirs shall sell the stock of said corporation owned by the decedent at the time of his death at a price predetermined by such agreement, or, on certain events, at a price determinable in accordance with such agreement[.]"

This recital neither contradicts, nor conflicts with, any of the operative sections of the agreement. The recital does however clarify the operative portions of the agreement. Contrary to the trial court's finding, the recital does not create an ambiguity, but rather, it erases the ambiguity. The recital will therefore be read in conjunction with the operative sections and given effect.

Having determined that the recital should be utilized in the interpretation of the Stock Purchase Agreement, it is now necessary to determine whether the trial court erred in admitting parol evidence to explain the intention of the parties at the time the agreement was made.

■ In the absence of fraud, mistake, ambiguity, illegality, duress or undue influence, extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible to a clear and unambiguous construction. *Hauck et al. v. Second Nat. Bank et al.* (1972), 153 Ind.App. 245, 286 N.E.2d 852. The sole issue now before the Court in this regard is whether the contract is ambiguous. The standard for determining whether an ambiguity in a contract exists is whether reasonable persons, on reading the contract would honestly differ as to its meaning. Ambiguity is not established merely by showing that a controversy exists. *Stevens v. St. Paul Fire & Marine Ins. Co.* (1981), Ind.App., 422 N.E.2d 319.

■ As noted previously, the recital, when read in conjunction with the operative provisions, erases any ambiguity with regard to the intentions of the parties concerning sale of stock upon the death of one of the shareholders. The trial court, however, also found an ambiguity because the recital was interlined to substitute "company" for "survivors." Rosella asserts that no ambiguity existed, but rather, the interlineation was an attempted amendment to the agreement which was ineffective because not all shareholders agreed to it.

When the Stock Purchase Agreement is read in its entirety, it is clear that the intention was that the company, and not the survivors, would have the option to buy the stock. Item 1 of the agreement provides that if a sale of stock is made during the lifetime of a shareholder, the stock must first be offered to the company. Item 3 provides that the company is the applicant owner and beneficiary of the insurance policies covering the lives of William B. Thomas, David L. Hughes and Merrill F. Stech. The proceeds from these policies, which would go to the company, are to be applied to the purchase of the stock. Such action is specifically provided for in Item 6. Reading the agreement as a whole, it is apparent that the recital was interlined to substitute "company" for "survivors" merely as a clarification and to make the wording of the recital conform to the wording in the operative portions of the agreement.

Even had the word "company" not been substituted for "survivors," the Stock Purchase Agreement would have to be construed as intending the company, not the survivors, as having an option to buy the stock. This result must be reached for two reasons. First, the agreement construed as a whole mandates this interpretation. Secondly, the term "survivors" in the recital conflicts with the term "company" found in the operative provisions. Since the operative portions are clear as to the fact that the company is the intended purchaser, they must control.

Neither the recital, nor the interlineation contained within the recital, creates an ambiguity when the Stock Purchase Agreement is read as a whole. The trial court erred in finding that the agreement is ambiguous.

No ambiguity being present in the Stock Purchase Agreement, the plain terms of the contract are conclusive as to its meaning. *Boswell v. Lyon, supra,* Ind.App., 401 N.E.2d 735. It is therefore necessary to examine only the agreement to determine Rosella's obligations with respect to the sale of the 100 shares of stock.

For the purposes of this appeal, the crucial provisions of the agreement are:

"WHEREAS, the stockholders mutually desire to enter into an agreement by which, on the event of the death of one of them, the survivors shall purchase and the decedent's estate and heirs shall sell the stock of said corporation *owned by the decedent at the time of his death* at a price predetermined by such agreement, or, on certain events, at a price determinable in accordance with such agreement[.]

\*    \*    \*    \*    \*    \*

2. *Purchase price.* For the purposes of this agreement, each share of said stock shall be regarded as having a value *as established by the stockholders at each annual meeting of the company.* The value of said stock as above determined may be changed from time to time by an endorsement over the signatures of the stockholders in an appendix to this agreement." (Emphasis added.)

The Panel Mart argues that the parol evidence regarding the intention of the parties is sufficient to sustain the trial court's order for the sale of the entire 100 shares of stock. Inasmuch as it has been decided that the parol evidence was improperly admitted and that the plain meaning of the agreement must be enforced, this portion of The Panel Mart's argument is unpersuasive. The Panel Mart also contends that because Rosella, in a third-party complaint, requested that the corporation be ordered to purchase the stock, and similarly testified that it was her desire to sell the stock, Rosella should be barred from challenging the order for the sale. Rosella in this case, had asserted that the Stock Purchase Agreement was not enforceable. Her desire was to sell the stock without reference to the agreement. Conceivably, if Rosella's request would have been honored, she could have sold the stock for a much higher price than she would have been able to if the Stock Purchase Agreement had been found to be binding. It is not fatally inconsistent that Rosella now desires to maintain her interest in the stock if the Stock Purchase Agreement is declared enforceable.

Rosella essentially concedes in her brief that if the recital is given effect, she is required to sell an undivided one-half interest in the stock. Rosella makes only a brief argument that she is entitled to the entire 100 shares of stock. The entire argument is as follows:

"It could also be argued that Mrs. Stech was under no obligation to sell any of the stock because it all vested in her by operation of law at the time of her husband's death, by virtue of I.C. 32–4–1.5–15. Mr. Stech, the 'decedent' owned no stock in the corporation at the time of his death and there was no stock on which the buy-sell agreement could become operative."

*Appellants'* brief at 141.

■ Assuming for the sake of argument that IC 1971, 32–4–1.5–15 (Burns 1980

Repl.)[1] applies to stock purchased prior to the effective date of the statute, it is apparent that both Rosella and Merrill contracted to sell the stock they would have received by right of survivorship. Rosella has failed to demonstrate how the provisions of IC 1971, 32–4–1.5–15 operate to invalidate a contract into which she freely entered. Although the statute provides for a right of survivorship in certain cases, it does not prohibit a joint tenant from entering a contract into which she is obligated to sell what would pass to her under the right of survivorship.

The Stock Purchase Agreement provides for the sale of stock "owned by the decedent at the time of his death." At the time of Merrill's death he owned only an undivided one-half interest in the 100 shares of stock. Accordingly, an undivided one-half interest in the stock is all that Rosella is obligated to sell to The Panel Mart.

Rosella next argues that the trial court erred in failing to find that the Stock Purchase Agreement was unconscionable. Rosella maintains that the agreement is unconscionable because it provides for the sale of the stock for $250 per share whereas the market value of the stock is at least $1,250 per share.

The Stock Purchase Agreement provided that the purchase price of the stock would be established by the shareholders at each annual meeting of the company. The record reveals that at the annual meeting held on May 4, 1976, it was agreed that the value of the stock, for the purpose of the agreement, would be set at $250 per share. The minutes of that shareholders' meeting show Rosella's signature under the following waiver and consent:

"We, the undersigned, being all of the stockholders of The Panel Mart, Inc., do hereby severally waive notice of the time, place, and purpose of the annual meeting of stockholders and do hereby call said meeting and consent to the holding thereof at the office of the corporation in the city of Fort Wayne, Indiana on the 4th day of May, 1976, and *we do hereby severally consent to the transaction of any and all business that may come before the meeting or any adjournment thereof.*" (Emphasis added.)

A contract may be declared unenforceable due to unconscionability when there is a gross disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly or unaware of its terms. Additionally, the contract must be one that no sensible person, not under delusion, duress or in distress would make, and such as no honest and fair person would accept. *Dan Purvis Drugs, Inc. v. Aetna Life Ins.* (1980), Ind.App., 412 N.E.2d 129 citing *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144. Rosella has failed to show a great disparity in bargaining power. In effect, each shareholder was wagering that one of the other shareholders, or their spouses, would be the first to die. The mere fact that Rosella lost her wager does not make the Stock Purchase Agreement unconscionable. The trial court therefore did not err in failing to find the Stock Purchase Agreement unconscionable.

Finally, Rosella contends that the trial court erred in failing to award her attorney fees due to the obdurate behavior and oppressive conduct of The Panel Mart and its officers and directors. The asserted obdurate behavior concerns the failure to pay

1. IC 1971, 32–4–1.5–15 (Burns 1980 Repl.) provides:
    "Personal property owned as tenants in common; exceptions
    Sec. 15. Personal property, other than an account, which is owned by two (2) or more persons is owned by them as tenants in common unless expressed otherwise in a written instrument. However, household goods acquired during coverture and in possession of both husband and wife, and any promissory note, bond, certificate of title to a motor vehicle, or any other written or printed instrument evidencing an interest in tangible or intangible personal property, other than an account, in the name of both husband and wife, shall upon the death of either become the sole property of the surviving spouse unless a clear contrary intention is expressed in a written instrument."

Merrill's estate the salary and bonus accrued to Merrill before his death.

Generally, the rule is that each party pay his own attorney fees in the absence of a statute, agreement or stipulation which provides otherwise. *St. Joseph's College et al. v. Morrison, Inc.* (1973), 158 Ind.App. 272, 302 N.E.2d 865. An exception to this general rule exists when a party has acted in bad faith. *Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127. In order to constitute bad faith in this regard, the conduct must be "vexatious and oppressive in the extreme." *St. Joseph's College v. Morrison, Inc., supra,* 158 Ind.App. at 280, 302 N.E.2d at 871.

The trial court, in the instant case, specifically found:

"16. Following the death of Mr. Stech on October 12, 1976, the Plaintiff determined that some sum was due to his estate or to Mrs. Stech for wages and/or profits and/or bonuses for the fiscal year from February, 1976, to February, 1977. Disputes arose subsequently as to the exact amount owing or as to whether anything was owing. However, the Plaintiff established the figure of Twenty-Eight Thousand, Five Hundred Dollars ($28,500.00) as of February 28, 1977, and it has been carried on the corporate books ever since.

"17. The Court finds that the payment of this sum has been unreasonably delayed (it has not been paid yet), but that the delay has not demonstrated the obstreperousness which would call for awarding attorney fees, nor the malice (and other associated terms) calling for an award of punitive damages."

As stated in *Cox v. Ubik, supra,* 424 N.E.2d at 130:

"[W]here a trial court makes findings of fact and conclusions of law, this Court will set aside that judgment only if it is clearly erroneous. *Lawrence v. Ball State University Bd.* (1980), Ind.App., 400 N.E.2d 179. The trial court judgment is presumed to be correct and the appellant has the burden of showing error. On review, this Court grants great deference to the trial court's ability to judge the credibility of the witnesses and to weigh the evidence. As such, this Court will not rejudge the credibility of the witnesses or reweigh the evidence but will view that evidence in a light most favorable to the trial court's decision including any reasonable inferences drawn from that evidence. *State v. King* (1980), Ind.App., 413 N.E.2d 1016. Consequently, the trial court decision will be accepted if it is supported by evidence of probative value. *Matter of Leckrone* (1980), Ind.App., 413 N.E.2d 977."

Deferring to the trial court's province in weighing the evidence and judging the credibility of the witnesses, the complexity of the issues in this case alone is a sufficient ground to conclude that the trial court did not abuse its discretion in denying Rosella's claim for attorney fees. It cannot be said as a matter of law that The Panel Mart acted in bad faith during the dispute.

For the foregoing reasons, this case is affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

RATLIFF and CONOVER, JJ., participating by designation, concur.