**CITY OF LOGANSPORT,
Defendant-Appellant,**

v.

**Kathy REMLEY, Plaintiff-Appellee.**

**No. 2 283A51.**

Court of Appeals of Indiana,
Second District.

Aug. 31, 1983.

Richard A. Maughmer, Hillis & Hillis, Logansport, for defendant-appellant.

William E. Beck, II, Martin & Beck, Kokomo, for plaintiff-appellee.

RATLIFF, Judge (Writing by Designation).

STATEMENT OF THE CASE

The Miami County Superior Court entered judgment in favor of Kathy Remley (Remley) against the City of Logansport (City) in her action for wages owed her by the City. The court also ordered the City to pay Remley's attorney fees. From this

judgment the City now appeals.[1] We affirm.

## FACTS

Remley was hired by the City through William Ferraro (Ferraro), Acting Administrator of the Logansport Park Department, on January 26, 1981. Remley's position was that of Program Director for the Department and her starting salary was $3.50 per hour. As Program Director, Remley was to coordinate and administer various programs sponsored by the Department, including arts and crafts classes, tennis lessons, a bicycle maintenance course, and a track meet.

In March of 1981, Ferraro persuaded Remley to assume, in addition to her responsibilities as Program Director, the management of the city swimming pool. These new responsibilities were assumed by Remley in May of 1981, at which time her hourly rate of pay was increased to $4.25. The Park Department approved the appointment of Remley to this position on June 10, 1981.

Throughout the summer of 1981, Remley managed the swimming pool operations in addition to her other duties as Program Director. Because of her additional responsibilities, Remley often worked in excess of forty hours per week. Ferraro assured her that while she could not be paid overtime for the excess hours, she would be compensated for the additional work. Ferraro explained that she would be allowed to take time off at a later date equal to the number of excess hours worked and receive compensation at her normal hourly rate.[1]

Following the conclusion of her employment in October of 1981, Remley demanded her compensatory time wages from the City. This demand was refused.

In her amended complaint Remley sought the sum of $918.00 for 216 hours of work performed at an hourly rate of $4.25. Additionally, Remley cited to Indiana Code section 22–2–5–2 and requested the court to

award her the 10% statutory penalty provided therein as well as attorney fees.

Following a bench trial the court entered a general judgment for Remley in the amount of $734.40 for the compensatory time wages owed her, and attorney fees in the amount of $1,872.00.

## ISSUES

The City has raised five issues in its brief. For purposes of clarity, we have rephrased them as follows:

1. Did the trial court err in finding Remley was entitled to compensatory time wages in the amount of $734.40?

2. Did the trial court err in finding Ferraro had authority to hire Remley and on behalf of the City agree to pay her compensatory time wages?

3. Did the trial court err in awarding attorney fees to Remley?

## DISCUSSION AND DECISION

*Issue One*

The City contends the judgment for Remley with regard to the wages was erroneous in two respects. First, it argues the trial court improperly relied upon IC §§ 22–2–5–1 and 2 in rendering the judgment. Second, the City asserts that the amount of the judgment was contrary to the evidence adduced at trial. We disagree with both contentions.

Indiana Code §§ 22–2–5–1 and 2 provide, *inter alia:*

"Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state shall pay each employee thereof at least semi-monthly or biweekly, if requested, the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the con-

---

1. The City referred to this arrangement as "comp time" and explained that it was utilized because the City could not afford to pay its employees overtime for work performed in excess of forty hours per week. We will refer to it as compensatory time.

trary shall be void. Such payment shall be made for all wages earned to a date not more than ten [10] days prior to the date of such payment: Provided, That nothing herein shall be taken to prevent payments being made at shorter intervals than herein specified nor to repeal any law providing for such payments ..."

"Every such person, firm, corporation or association who shall fail to make pay-. ment of wages to any such employee, as provided in section one [22–2–5–1] of this act, shall as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid[,] ten per cent [10%] of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages, or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys."

■ We have long held that inasmuch as these provisions are penal in nature, and in derogation of the common law, they must be strictly construed. *Palmer v. Stockberger,* (1963) 135 Ind.App. 263, 270, 193 N.E.2d 384, 387–88; *Flex Let Corp. v. Vogel,* (1962) 134 Ind.App. 495, 498, 186 N.E.2d 696, 698, *trans. denied* (1963). Moreover, it is essential to a successful assertion of a claim under these provisions that the request for payment "be made prior to or concurrent with the period of employment" at issue, "*and not after a wage dispute has arisen.*" *Palmer,* 135 Ind.App. at 271, 193 N.E.2d at 388 (emphasis original).

■ The City vigorously argues that the statutory provisions have no application here because it always paid Remley on a biweekly basis and because Remley never made any request regarding her wages un-

til after her employment had been terminated. However, we need not address this issue inasmuch as the trial court's judgment was general in nature and in no way stated that it was premised upon the statutory provisions.[2] General judgments are presumed to be premised upon findings which are supported by the evidence, and provided the decision of the trial court can be sustained upon any legal theory, we must affirm. *Uland v. National City Bank of Evansville,* (1983) Ind.App., 447 N.E.2d 1124, 1128, (transfer pending); *English Coal Co., Inc. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 307, *trans. denied; Indiana & Michigan Electric Co. v. Schnuck,* (1973) 260 Ind. 632, 634, 298 N.E.2d 436, 439. Furthermore, in reviewing the record to determine whether the trial court's decision was proper, we will neither reweigh the evidence nor judge the credibility of witnesses. *Uland,* 447 N.E.2d at 1128. Instead, we consider only that evidence, together with all reasonable inferences drawn therefrom, which favor the judgment, and if from this perspective there is evidence of probative value which supports the judgment, we will not disturb it. *Schnuck,* 260 Ind. at 634–35, 298 N.E.2d at 438.

In the instant case, Remley sought to recover unpaid compensatory time wages owed her by the City. While her complaint alleged a theory of recovery under IC §§ 22–2–5–1 and 2, the trial court's judgment contained no special findings to indicate it was premised upon those provisions. Thus, we look for any other legal theory upon which the judgment may be sustained.

■ Viewing only that evidence which favors the judgment, we believe it may be sustained on grounds wholly apart from the statutory theory. Remley presented evidence which clearly established that the City owed her for earned but unpaid compensatory wages. There was also evidence to the contrary. However, it is not our

---

**2.** The City may well be correct in its contention that the statutory provisions are inapplicable herein. There is no evidence in the record that Remley made demands upon the City until af-

ter her employment had ended and the dispute over wages had arisen. *Palmer,* at 271 and 193 N.E.2d 388.

office to reweigh the evidence and we decline the City's invitation to do so.

We conclude, therefore, that insofar as there is evidence of probative value to support the trial court's judgment, it may not be disturbed.

In a further challenge to the judgment, the City argues that the amount awarded Remley was contrary to the evidence. Once again, we disagree.

■ The evidence presented regarding the amount of compensatory time wages owing to Remley was at best contradictory and at worst indecipherable. Remley claimed she was due $918.00 for 216 hours of work performed at a rate of $4.25 per hour. The City denied any liability, but conceded that if any wages were due, they amounted to at most $412.88. Thus, between these respective amounts, the trial court was to ascertain from the contradictory evidence before it the sum still owing to Remley.

This court was faced with a similar situation in *Grissom v. Moran,* (1973) 154 Ind. App. 432, 292 N.E.2d 627 (on petition for rehearing), *trans. denied.* There, we held that where a trial court does not make specific findings of fact detailing how its computations were made, it would be assumed the court weighed the equities properly, and that the decision would only be reversed upon a showing of an abuse of discretion. *Id.* at 436, 292 N.E.2d at 629.

Herein, the trial court was presented with figures ranging from $412.88 to $918.00. Because the trial court's general judgment does not reveal how it determined Remley was entitled to $743.40, we must assume its decision was proper. *Id.* In light of the fact the trial court selected an amount within the aforementioned range, and the fact that the City has failed to show any abuse of discretion, we are constrained to conclude the trial court awarded an amount consistent with the evidence before it. Consequently, we will not disturb its determination.

*Issue Two*

■ The City next contends that William Ferraro had no authority to hire Remley or agree to pay her compensatory time wages for hours worked in excess of forty per week. Essentially, the City argues that only the Board of Parks and Recreation possessed the authority to hire employees and negotiate their wages. The City, however, has ignored certain evidence which leads us to conclude Ferraro possessed the requisite authority to engage the services of Remley.

Contained in the record of the instant case is a copy of the Logansport Parks and Recreation Employee Handbook. Therein, Ferraro's job as Administrator is described in terms of functions, supervision, and examples of duties. In the last named category the Administrator's duties are defined in pertinent part as follows: "Organizes and directs the services of the agency in accordance with Board policies and City policies and ordinances. Recruits, selects, employs, and develops personnel for the department." Record at 255. Thus, subject to certain Board policies, Ferraro was essentially charged with the responsibility of hiring Park Department personnel.

Despite this broad description of authority, the City maintains that Indiana Code section 19–7–4–21 vested all authority for hiring park personnel exclusively in the Board.[3] However, what the City refuses to recognize is that it not only gave express approval for the hiring of Remley in its June 10, 1981, meeting, but also it agreed during a September meeting that Remley should be paid any compensatory time wages due her. Moreover, in his testimony, Ferraro stated that the Board members were aware Remley was to be paid compensatory time wages well before its ultimate approval, and that the Board acquiesced in the arrangement.

---

**3.** This section has since been repealed. However, it essentially defined the authority of boards of parks and recreation. It also provided for the delegation of authority to administrative officers such as Ferraro.

We therefore believe there was sufficient evidence to warrant the trial court's conclusion that Ferraro was well within his authority when he engaged Remley's services and agreed to pay her compensatory time wages.

*Issue Three*

· The City's final challenge pertains to the award of attorney fees to Remley. Essentially, it argues that insofar as IC §§ 22–2–5–1 and 2 are inapplicable to the present case, the provision for awarding attorney fees found in the latter section does not support the award made by the trial court. As noted previously, the applicability of IC §§ 22–2–5–1 and 2 herein is doubtful; however, because the trial court rendered a general judgment we need not determine this issue. Rather, if the trial court's decision can be sustained upon any legal theory, we must affirm. *Uland*, 447 N.E.2d at 1128; *English Coal Co.*, 422 N.E.2d at 307; *Schnuck*, 260 Ind. at 634, 298 N.E.2d at 439. Hence, provided the award of attorney fees is sustainable upon any legal theory, we are bound to affirm.

Indiana follows the American Rule concerning the awarding of attorney fees. *City of Marion v. Antrobus,* (1983) Ind.App., 448 N.E.2d 325, 331. Ordinarily, in the absence of a statute or agreement to the contrary, each party must bear the burden of his own counsel fees. *Id.* at 332; *Caltram Equipment Co., Inc. v. Rowe,* (1982) Ind.App., 441 N.E.2d 46, 47–48; *Stech v. Panel Mart, Inc.,* (1982) Ind.App., 434 N.E.2d 97, 104; *Cox v. Ubik,* (1981) Ind. App., 424 N.E.2d 127, 129; *St. Joseph's College v. Morrison, Inc.,* (1973) 158 Ind.App. 272, 279, 302 N.E.2d 865, 870, *trans. denied.* However, as we noted in *Cox,* there are several exceptions to this general rule. *Id.* at 129.

Pertinent to our discussion herein is the bad faith or obdurate behavior exception.[4] To constitute bad faith or obdurate behav-

ior for the purpose of awarding attorney fees, we have held that the conduct of the party to be charged must have been "vexatious and oppressive in the extreme." *St. Joseph College,* 158 Ind.App. 280, 302 N.E.2d at 871. The rationale for requiring such a stringent standard was well stated by Judge Hoffman in *Cox:*

> "First, allowance of attorney fees, absent statute or agreement, is an exception to a longstanding rule in Indiana that litigants must pay their own counsel fees. Second, the nature of an attorney fee award under the bad faith exception is punitive, designed to reimburse a prevailing party who has been dragged into baseless litigation and thereby subjected to great expense."

*Id.* at 129 (citations omitted).

The issue before us, therefore, is whether the conduct of the City with regard to paying Remley her compensatory time wages constituted obdurate behavior. In support of her argument that the City did indeed engage in such behavior, Remley directs our attention to the undisputed testimony of William Ferraro concerning the City's reason for dismissing her. In his testimony Ferraro stated that during a meeting between the Mayor of Logansport, the Parks Board President, City Clerk-Treasurer, and other City officials—at which Ferraro was in attendance—the officials determined Remley should be fired in order to alleviate the need of paying her compensatory time wages. Upon reaching their decision, Ferraro testified, the officials ordered him to fire Remley.

■ The trial court was obviously persuaded by Ferraro's testimony as revealed by the following colloquy between the judge and counsel for the City.

> "BY THE COURT: Now we have testimony that the City wanted to fire her [Remley] to quit paying her comp time, which indicates the City thought they

---

4. There are two other recognized exceptions. The first is the "common fraud" exception—"where a court wants to insure that the beneficiaries of an action are the ones to share the expenses of that action." The second is the

"private attorney general" exception—"where the court compensates a private party who has brought suit to effectuate a strong legislative policy." *Cox* at 129.

owed it to her. You don't fire somebody to avoid paying if you don't think you owe it to them.

"BY MR. MAUGHMER: Your Honor . . . .

"BY THE COURT: That doesn't make the City look very good.

"BY MR. MAUGHMER: I don't think Mrs. Remley was fired.

"BY THE COURT: I don;t [sic] know how she left the employment, but we have testimony in the record unrebutted testimony, unrefuted testimony, that they discussed firing her to avoid having to pay her comp time."

Record at 285.

The City counters, despite Ferraro's testimony, that its decision to fire Remley is mitigated by the fact that Remley left her job voluntarily because she was pregnant. The evidence, however, as noted by the trial court, was conflicting regarding whether Remley left of her own volition or was fired by the City. The trial court obviously chose to draw the permissible inference that Remley was fired. Although we may have found otherwise had we been in the position of fact finder, we are not free at this juncture to reweigh the evidence. *Uland*, 447 N.E.2d at 1128. Thus, we will not disturb the trial court's determination.

Furthermore, we believe the City's conduct clearly constituted obdurate behavior; behavior which warranted an award of attorney fees to Remley. The City hired Remley and through Ferraro agreed to pay her compensatory time wages for any hours worked in excess of forty per week. Upon its discovery that Remley had accumulated more hours than it previously contemplated, the City apparently decided the arrangement was unsatisfactory and determined the only expedient solution was to fire her. This determination represented an attempt on the part of the City to alter the terms of the contract between the parties once those terms were no longer to the City's liking. Such conduct cannot be sanctioned. Indeed, it warrants the punitive imposition of attorney fees under the obdurate behavior exception. *Cox,* at 129. We thus find the

trial court was correct in its determination that Remley was entitled to an award of attorney fees.

The judgment is affirmed in all respects.

BUCHANAN, C.J., and SHIELDS, J., concur.